201 N.J. Super. 105 (1985)
492 A.2d 1034
IN THE MATTER OF THE APPLICATION OF JOHN MADIN/LORDLAND DEVELOPMENT INTERNATIONAL FOR PINELANDS DEVELOPMENT APPROVAL.
PLANNING BOARD OF HAMILTON TOWNSHIP, ATLANTIC COUNTY, APPELLANT,
v.
NEW JERSEY PINELANDS COMMISSION, JOHN MADIN/LORDLAND DEVELOPMENT INTERNATIONAL AND CASTLEHARD DEVELOPMENT INTERNATIONAL, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 29, 1985.
Decided May 9, 1985.
*107 Before Judges MICHELS, PETRELLA and BAIME.
William C. Todd III argued the cause for appellant Egg Harbor Township Planning Board (Tort, Jacobs, Todd & Bruso, attorneys; A. Ralph Perone, of counsel).
*108 Michael J. Fitzgerald argued the cause for appellant Hamilton Township Planning Board (Previti, Todd, Gemmel, Fitzgerald & Nugent, attorneys).
John M. Van Dalen, Deputy Attorney General, argued the cause for respondent New Jersey Pinelands Commission (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel).
Nelson C. Johnson argued the cause for respondents John Madin/Lordland Development International and Castlehard Development International (Bertman, Johnson and Sahli, attorneys).
The opinion of the court was delivered by PETRELLA, J.A.D.
These consolidated appeals involve challenges by the planning boards of the Townships of Egg Harbor (Egg Harbor) and Hamilton (Hamilton) to the action of the New Jersey Pinelands Commission (Commission) denying them standing and an opportunity to be heard or to object to development approvals granted by the Commission's staff in their respective communities. We hold that the planning boards have standing under the statute and that notice and hearings are required. We reverse and remand for public hearings with respect to the development plans.

I.
Before describing the underlying factual complex in this case it is appropriate to review the statutory framework within which these appeals arise. In 1978 the federal government established the "Pinelands National Reserve" of approximately 1,000,000 acres under The National Parks and Recreation Act of 1978. 16 U.S.C.A. § 471i. The first stated congressional purpose of this legislation was "to protect, preserve and enhance the significant values of the land and water resources of the Pinelands area." 16 U.S.C.A. § 471i(b)(1). Congress found *109 that the Pinelands were an environmentally and ecologically sensitive area "containing approximately 1,000,000 acres of pine-oak forest, extensive surface and ground water resources of high quality, and a wide diversity of rare plant and animal species, provid[ing] significant ecological, natural, cultural, recreational, educational, agricultural, and public health benefits." Id. at § 471i(a)(1). Compare N.J.S.A. 13:18A-2. Congress recognized that "the State of New Jersey and its local units of government have authority to prevent or minimize adverse uses of the land and water resources of the Pinelands area." 16 U.S.C.A. § 471i(a)(5). To assist in accomplishing the purposes of the act Congress appropriated monies to New Jersey to acquire enviromentality sensitive lands and to develop a comprehensive management plan (CMP) for the Pinelands. Id. at § 471i(h).
Congress requested that New Jersey establish a planning entity which would be responsible for developing the CMP. Id. at § 471i(d). The CMP was required to include, among other things, "A program to provide for the maximum feasible local government and public participation in the management of the Pinelands National Reserve." Id. at § 471i(f)(7). Failure to conform to federal requirements for the management of the area or in the modification of an approved plan can result in funding losses and a federal claim for reimbursement. See Id. at § 471i(g).
On February 8, 1979 Governor Byrne issued Executive Order 71, pending preparation of the CMP. The order created a planning entity and imposed a development moratorium in the area defined as the Pinelands. Thereafter, the Pinelands Protection Act, N.J.S.A. 13:18A-1, et seq. (sometimes the Act), became effective on June 28, 1979. That Act created the Pinelands Commission and directed it to prepare a CMP for the Pinelands area and to impose a moratorium on all building therein except where development applications were reviewed and approved by the Commission pending completion of the CMP. N.J.S.A. 13:18A-4, -8 and -14. The purposes of the *110 Pinelands Protection Act are set forth in N.J.S.A. 13:18A-2. The emphasis in that section is protection and preservation of the Pinelands. Moreover, the statute recognized "that such protection will require the coordinated efforts of all relevant municipal, county, State and Federal agencies." Id. Unlike the procedures authorized in The Wetlands Act of 1970 (N.J.S.A. 13:9A-1, et seq.) and in the Coastal Area Facility Review Act (N.J.S.A. 13:19-1, et seq.), for the issuing of permits by the Department of Environmental Protection, the approach taken in the Pinelands Protection Act immerses the Commission in land use planning and zoning.
The Act requires the CMP to include minimum land use standards, maximum population densities and provide for the regulation or prohibition of various uses for specific portions of the Pinelands area. N.J.S.A. 13:18A-8 i(1). It also provides that subsequent to adoption of the CMP no development application could be approved unless it conformed to the CMP or unless the Commission decided to waive strict compliance with the CMP. Id. at 13:18A-10 c. Under N.J.S.A. 13:18A-12 a and b it was contemplated that within one year of adoption of the CMP each county and municipality in the Pinelands area would submit a revised master plan and local land use ordinance to the Commission for review. Approval of the revised plans and ordinances is made contingent upon their being in conformity with the minimum standards of the CMP.
N.J.S.A. 13:18A-12 c and d provide for the consequences of the failure of a municipality to adopt or enforce a new master plan and land use ordinance in conformity with the CMP. Those subsections read:
c. In the event that any county or municipality fails to adopt or enforce an approved revised master plan or implementing land use ordinances, as the case may be, including any condition thereto imposed by the commission, the commission shall adopt and enforce such rules and regulations as may be necessary to implement the minimum standards contained in the comprehensive management plan as applicable to any such county or municipality.

*111 d. Any approval of any application for development granted by any municipality, county or agency thereof in violation of the provisions of this section shall be null and void and of no force and effect at law or equity.
N.J.S.A. 13:18A-12 c and d thus treat differently those municipalities which have not adopted an approved master plan or land use ordinance, or by inference those which have not succeeded in having them approved by the Commission. The Commission has adopted regulations which expand the statute. The CMP, actually adopted as the regulations in N.J.A.C. 7:50-1, et seq., defines a "certified municipal master plan or land use ordinance" as "any municipal master plan or land use ordinance certified by the Commission pursuant to N.J.A.C. 7:50-3, Part IV as being in conformance with the minimum standards of this Plan." N.J.A.C. 7:50-2.11. Under the CMP all municipalities with "uncertified" land use ordinances and master plans are prohibited from approving or rejecting development proposals. Instead, the Commission asserts exclusive authority to determine whether the proposed development is in conformance with the minimum standards of the CMP. Id. at 7:50-4.11 and 7:50-4.13. All municipalities with "certified" land use ordinances and master plans, by contrast, may pass directly on any development proposal sought to be located in whole or in part within the municipality. See id. at 7:50-4:21 to 7:50-4:33; see also N.J.S.A. 13:18A-14. The Commission is authorized to review (apparently at its discretion) any municipal approval of any application for development in the Pinelands area. N.J.S.A. 13:18A-15; N.J.A.C. 7:50-4:21 to 7:50-4:33.
With this general discussion of the relevant statutory framework, we turn now to the factual setting of these appeals and the contentions of the parties.

II.
Both Egg Harbor and Hamilton are sometimes referred to as "uncertified" municipalities because their master plans and land-use ordinances have not been approved by the Commission.[1] *112 As a result of the lack of "certification" at the time the application of respondents John Madin/Lordland Development International and Castlehard Development International ("the developers") was submitted to the Commission, both municipalities were unable in the first instance to approve development applications covered by the Pinelands Protection Act. The Commission thus exercised its authority to pass directly upon the developers' application without the necessity of municipal zoning approvals. N.J.S.A. 13:18A-12 c and d.
The assistant director of the Commission, William Harrison, on February 17, 1984 approved[2] the developers' application for a Planned Unit Development (PUD) on 528.55 acres which lie in portions of both Hamilton and Egg Harbor. The land involved fell in what the Commission had designated as a "Regional Growth Area." See N.J.A.C. 7:50-5-13(g). The approval of the development application recited under a heading "Findings of Fact," that the developers proposed to construct 1,551 dwelling units, two hotels (one of which was to include a restaurant and bars and the other would contain a health care center and other commercial space), a community shopping center, a library, recreational facilities for the residents, and change the layout of an existing golf course. The developers also proposed to build 992,800 square feet of professional, commercial and hightech industrial space. Approximately thirty-three acres were to *113 be devoted to nonresidential uses. Of the remaining acreage, 51 acres had a seasonal high-water table of 18 inches or less below the natural ground surface. The "Findings of Fact" in the approval said that: "There are existing public sewers."
The approval document recited that most of the fresh-water wetlands located on and adjacent to the parcel were undisturbed and that the developers were required to maintain a 300 foot buffer between them. Williams found, without providing specific details, that a small portion of wetlands previously affected by existing development would not be further disturbed if development were located at least 100 feet from it. Notwithstanding the fact that the developers proposed road and utility crossings of the wetlands, the assistant director also found that "[t]he applicant has demonstrated that there is no feasible alternative route that ... will have a lesser impact" and that this would not cause a significant adverse impact. Williams likewise found that the proposed storm water drainage system from the proposed extensive development of this approximately 530 acres would result in no increase in volume or rate of storm water runoff from the parcel after completion of the proposed development in the event of a storm of the severity of a 50-year, 24-hour storm.
After further finding in general fashion that the proposal complied with the CMP's housing requirements, Williams concluded that the proposed PUD was a permitted use in a Regional Growth Area[3] of the Pinelands, and that the proposed development was consistent with the CMP's management standards. Fourteen "conditions" were imposed on the development proposal including a requirement for including a minimum *114 of 155 dwelling units which would be affordable to low-income households and 155 dwelling units affordable to moderate-income households. The approval letter's final provisions, under a heading labeled "RECONSIDERATION," stated: "Any person who is aggrieved by this determination may seek reconsideration of the decision by the Pinelands Commission within 18 days of the date of this letter by giving notice, by Certified mail, of the request for reconsideration to the Pinelands Commission." See N.J.A.C. 7:50-4.17. The notice was to include the "name and address of the person requesting the reconsideration," "application number," a "brief statement of the basis for the reconsideration request," and a "certificate of service" indicating that service of the notice had been sent to the secretary of the Egg Harbor Township Planning Board, the secretary of the Hamilton Township Planning Board, the secretary of the Atlantic County Planning Board, and the Hamilton and Egg Harbor Environmental Commissions. See N.J.A.C. 7:50-4.81(a). See also N.J.S.A. 40:56A-2.
We do not know how or based on what documents or evidence the assistant director's "findings" were made because we are unaware of any record with regard to the approval. These "findings," which were recited in a little more than one typewritten page, were presumably based on staff review of the papers submitted on the developers' application.[4] It appears *115 that the Executive Director (defined as the "Chief Administrative Officer of the Commission", N.J.S.A. 13:18A-5) under the CMP (regulations) as written may designate a representative "to perform any functions delegated" to him "pursuant to any provision" of the regulations, who would essentially thereby be given final-decision making power except where a "redetermination" request is effective. See, e.g., N.J.A.C. 7:50-4.16; 7:50-4.17; 7:50-4.27(a)-(d); 7:50-4.28(b); 7:50-4.31; 7:50-4.44; 7:50-4.53 and 4.54.
N.J.A.C. 7:50-4.15 apparently attempts to make the executive director's approval final in many instances, notwithstanding the statutory requirements of N.J.S.A. 13:18A-14 f (see infra n. 9), unless "reconsideration" is sought under N.J.A.C. 7:50-4.17, which provides:
Any interested person who is aggrieved by any determination made by the Executive Director pursuant to this Part may seek reconsideration of such determination as provided by N.J.A.C. 7:50-4.81.
Apparently no public hearing was conducted or was contemplated on the developers' application as far as we can determine. See N.J.S.A. 13:18A-15. Nor does the sparse record before us indicate that there had been any notice to the public at any stage of the matter or that the Commission made a final determination with respect to the subject development. See N.J.S.A. 13:18A-14 f, -15, -20.
Requests for "reconsideration" of the development approval were filed by Hamilton and Egg Harbor on March 6 and March 12, 1984, respectively. Hamilton contended that the assistant director's February 17, 1984 development approval was not consistent with the Pinelands Protection Act and the CMP because, contrary to the assistant director's findings of fact, there were no existing public sewers, thus potentially endangering *116 water quality and wetlands. It also asserted that air quality would be adversely affected and noise generated by traffic at the site would exceed the CMP standards.[5]
Egg Harbor asserted that the wetlands located on the development site would be adversely impacted because of the lack of a proper sewerage system, that the assistant director's failure to specify in the development approval the acreage and number of dwelling units to be developed within Egg Harbor made it impossible to determine whether the application complied with the intensity of dwelling units permitted by the CMP; that in portions of the property covered by the approval the water table did not meet the standards provided for in the CMP; that the development failed to provide for proper on-site waste management as required by the CMP, and that there was no provision for the minimum middle-income housing required by the CMP.
At the time the planning boards each filed their "Request for Reconsideration," resolution 83-101, which had been adopted by the Commission on November 4, 1983, permitted "uncertified" municipalities such as Egg Harbor and Hamilton to seek Commission reconsideration of certain staff decisions. Accordingly, when Hamilton and Egg Harbor sought reconsideration, their requests were forwarded by the Commission's staff to the Office of Administrative Law (OAL) for hearings as contested cases. That resolution had provided that requests for reconsideration of staff actions by uncertified municipalities would not be deemed contested cases requiring a hearing "unless the uncertified municipality ... has specifically identified aspects *117 of the staff decision which are alleged to be contrary to provisions of the Comprehensive Management Plan." The minutes of the Commission's November 4, 1983 meeting at which that resolution had been adopted reflected some uncertainty on the part of the Commission as to whether uncertified municipalities had legal standing to challenge actions on applications for development approval. The Commission sought the Attorney General's opinion on the subject and subsequently received oral advice from the assigned deputy attorney general that "uncertified" municipalities had no standing to challenge a Commission decision. The minutes reflect the sentiment "that it is wrong to hold up an application for a lengthy period because of an appeal that is often frivolous and intended to frustrate implementation of the CMP."
In response, the Commission adopted resolution 84-20 on April 6, 1984 in which it declared that "an uncertified municipality can effectively thwart the goals of the Pinelands Protection Act and the Comprehensive Management Plan by requesting hearings before the Office of Administrative Law." The Commission did not state how the action of Hamilton or Egg Harbor or any other municipality would thwart the primary goals of the Pinelands Protection Act as they are set forth in N.J.S.A. 13:18A-2. The Commission concluded that uncertified municipalities had violated the Pinelands Protection Act by not revising their master plans and land-use ordinances to conform with the provisions in the CMP and thus "cannot legitimately claim an interest in insuring that staff decisions on applications are consistent with the Plan."[6] The Commission determined that uncertified municipalities are thus not considered "interested persons" as that term is defined in N.J.A.C. 7:50-2.11[7] and *118 used in N.J.A.C. 7:50-4.17, quoted supra. The Commission accordingly resolved that:
[U]ncertified municipalities and any agency thereof are not entitled to request reconsideration of staff decisions and that no such request for reconsideration shall be referred to the Office of Administrative Law and any matter presently pending before to [sic] Office of Administrative Law shall be withdrawn unless an administrative hearing has already been held.
On April 13, 1984 the assistant director of the Commission wrote to the OAL enclosing a copy of resolution 84-20 and directing that the challenges by Hamilton and Egg Harbor Planning Boards be returned by the OAL to the Commission.[8] The OAL issued a notice of "withdrawal" on April 17, 1984.
It is from that action that Hamilton and Egg Harbor filed notices of appeal challenging the Commission's determination that they were not entitled to request reconsideration of staff decisions and the determination that no such request shall be referred to the OAL as a contested case. The Commission was by that action presumably attempting to preclude applicability of N.J.S.A. 52:14B-2(b) and -10 of the Administrative Procedure Act. Essentially the Commission concluded that uncertified *119 municipalities did not have standing to challenge the action of either the Commission or its staff.
The central issues presented on this appeal are: (1) whether the planning boards of municipalities whose master plans and land use ordinances have not been approved by the Commission (sometimes referred to as "uncertified" municipalities) have standing to be heard or to challenge development approvals by the Commission or its staff, and (2) whether such municipalities are entitled to a hearing prior to final development approval of projects located within their borders. Appellants also raise the issue of whether the Commission should be estopped from denying "uncertified" municipalities access to the administrative hearing process. In light of our determination that appellants are entitled to a hearing we need not decide that issue.
Because of the State's policy regarding the Pinelands area and the thrust of the statutes, we are compelled to address what we view as a serious flaw in the Pinelands Protection Act and the CMP, that is, they fail to provide the public with an opportunity for hearing prior to final development approval.
Both planning boards argue that they have standing to raise challenges in quasi-judicial administrative proceedings to development approvals by the Commission's staff.[9] The Egg Harbor Planning Board asserts that it is aggrieved in the sense that the Commission's failure to adhere to its own standards in granting the developers' application for development impairs the local planning board's present and future ability to regulate development in the municipality. Both boards argue that in adopting the Pinelands Protection Act the Legislature did not intend to *120 preclude municipalities without approved zoning ordinances from participation in the process by which the Commission implements the minimum standards of its CMP in those municipalities. They in effect argue that there is no basis in the Pinelands Protection Act for suggesting that the Commission should ignore input from the planning boards of such municipalities or why they should not want such input, particularly on a development application of the magnitude involved here.
Egg Harbor points out that N.J.A.C. 7:50-4.17 provides any "interested person" the right to seek "reconsideration" and that 7:50-4.2(b) requires developers to notify township and county clerks, as well as any applicable municipal environmental commission, see N.J.S.A. 40:56A-1, et seq., of their applications. It contends that it "would be onerous and unjust" to construe the term "interested person" in N.J.A.C. 7:50-2.11 and N.J.A.C. 7:50-4.17 (and presumably the term "interested parties" in N.J.S.A. 52:14B-8) as not including municipal agencies in Pinelands area municipalities wherein the zoning ordinances have not yet been approved by the Commission, particularly where the Commission's action on a development application "impinges on and interacts with the municipal agency's sphere of responsibility." Egg Harbor argues that in the past the Commission had provided planning boards of uncertified municipalities with notice of development applications and afforded them an opportunity to request reconsideration of staff decisions on such applications. It thus contends that the past procedure should be reinstated.
The developer and the Commission rely on Bergen County v. Port of New York Authority, 32 N.J. 303, 311-315 (1960) as supporting the proposition that governmental agencies (other than the Governor and the Attorney General) have no right independent of the general public to challenge the actions of the Commission. (The Public Advocate would appear to be another exception to that proposition.) Hamilton Township concedes that that case held that a county could not challenge the actions of a governmental entity. The Township, however, distinguishes *121 that case on the ground that it involved judicial standing rather than administrative standing. Appellants assert that Bergen County is inapplicable here because considerations of governmental autonomy are not present, and that they do not seek to challenge Commission action, but only seek the opportunity to develop a full record. Hamilton further argues that if municipalities without approval are not accorded standing, "for all practical purposes" most development approvals by the Commission's staff[10] "which are favorable to the applicant" will go unchallenged because there is no requirement in the Commission's regulations for notice to the citizens of an affected municipality, and even if they had such notice, few would have the necessary time and resources to pursue a request for reconsideration.
The developers argue that the Commission has discretionary authority to amend its rules regarding reconsideration rights afforded "uncertified" municipalities in order to implement the CMP in those municipalities.[11] They join with the Commission in asserting that the planning boards' requests for reconsideration and these appeals "are both calculated to thwart the goals of the Pinelands Protection Act and the Comprehensive Management Plan by obstructing development approved by the Pinelands Commission." They argue that no hearing is required where agency actions are essentially ministerial, as opposed to quasi-judicial in nature.

III.

A.
We now address respondent's contention that municipalities without approved zoning ordinances, the so-called uncertified *122 municipalities, do not have standing to challenge development approvals made by the Pinelands Commission. The Commission has apparently not taken the position that any county was precluded from seeking reconsideration. Respondents rely on Bergen County v. Port of New York Authority, supra, 32 N.J. 303. There the County of Bergen sued the Port of New York Authority (Port Authority),[12] a bistate agency created by a compact between the states of New Jersey and New York. The Port Authority acquired real property for Teterboro Airport under its enabling legislation. Bergen County asserted that the Port Authority acquired the property for airport purposes and then improperly constructed an industrial building on the property and leased it to a third party for a 20-year term. The county further alleged that the Port Authority was not authorized to undertake construction and leasing of buildings unrelated to airport purposes. It contended that the Port Authority was illegally engaging in private enterprise "in direct competition with private capital and privately owned property and circumventing the tax laws of this State, thereby causing great loss and detriment to the County of Bergen and to the municipalities and inhabitants thereof and to the owners of property located therein." Id. at 307. The trial court dismissed the county's complaint for failure to state a cause of action.
The Supreme Court affirmed on direct certification. It interpreted the county's complaint as an attempt "to vindicate the general public interest upon an allegation that another agency of government, the Port Authority, is exceeding its statutory powers." Id. at 311. The court held that a taxpayer, and a representative of the public would have standing to sue under such circumstances, but that a county could not "assume the role of defender of the public interest."
*123 In our view the Bergen County case does not impede the review here sought by Hamilton and Egg Harbor Townships. There the county was not specifically aggrieved by the Port Authority's condemnation action and lease proposal in a way that peculiarly or directly affected it. But for the claim of loss of property to the tax rolls, the county would not have had a basis to object if there had been no violation of any laws or regulations. Moreover, the claim of loss of property to the tax rolls depended on whether the project undertaken by the Port Authority was for a public purpose. That issue was also not only subject to legal challenge by a taxpayer, but could be raised as a defense to the condemnation action. Furthermore, in that case a public agency was proposing development of its own facilities. That situation is quite distinguishable from that involved in the instant appeal. Here it is not the State or any State agency which is developing property in what is supposed to be protected Pinelands, but rather private developers with a profit motive. Appellants are not directly challenging the Commission's statutory powers as such, but merely seek to be heard in the development approval process.
Furthermore, the court in Bergen County was aware that it was not establishing an inflexible rule when it said:
It is difficult to foresee all eventualities. It may be that situations will arise in which despite the absence of an intrusion upon the property or political powers of a county or municipality, it may appropriately speak with respect to some hurt experienced generally by its inhabitants. We need not and do not foreclose that possibility. [Id. at 315-316.]
Even assuming that appellants' actions could be characterized as an attempt to vindicate the general public interest, we nevertheless view the instant case as presenting one of those exceptional situations contemplated by the above language. It is clear from the Pinelands Protection Act that protection of the sensitive lands and resources in the Pinelands area is a paramount objective, and that development in these areas is to be the exception, not the rule. See N.J.S.A. 13:18A-1 to -2; see also N.J.S.A. 13:18A-9; Senate Energy and Environment Committee Statement to Senate Bill 3091, which was enacted as L. *124 1979, c. 111. Municipalities, whether their land use ordinances are certified or uncertified, have an interest in Commission proceedings. That interest mandates that they have standing to be heard or to challenge development approval, particularly where projects reach the magnitude proposed by the developers herein. Proper utilization of the sensitive lands and resources of the Pinelands area requires that those municipalities in which development is proposed be given the opportunity to present relevant information about the Pinelands for which they may have peculiar knowledge.
Respondents, also rely on our decision in Dover Twp. v. Dover Twp. Bd. of Adjustment, 158 N.J. Super. 401 (App.Div. 1978). We there noted that an "abrogation of authority" is a distinct matter not barred from challenge by another public agency. The action of the Commission here in effect represents an intrusion upon the various political and statutory roles of the planning boards. Merely because a Pinelands municipality has not had its zoning ordinance approved as conforming to the CMP and can not presently approve development proposals under its land use ordinance does not make it a nonentity. Nor does it preclude such a municipality from fulfilling its other functions with respect to recommending changes in the land use law, studying the master plan and considering matters not preempted by the Pinelands Act and the CMP. As we said in Dover Twp.:
We can perceive no rational basis for denying the township the right to seek judicial redress of that alleged injury and the right to seek judicial protection of its exclusive sphere of governmental action from unwarranted invasion by another public body. [158 N.J. at 410].
Based on our analysis of the Bergen County and the Dover Tp. cases we find no reason to distinguish between administrative standing and judicial standing. Nor does any preemption of local land use ordinances by the Pinelands Protection Act and the CMP affect the result here.
The Commission relies upon N.J.S.A. 13:18A-12 c as authority to bar uncertified municipalities standing on their applications *125 for "reconsideration" of the staff determination with respect to the development proposal at issue. The language so relied upon is:
[T]he Commission shall adopt and enforce such rules and regulations as may be necessary to implement the minimum standards contained in the comprehensive management plan as applicable to any such county or municipality. [N.J.S.A. 13:18A-12 c].
The Commission's reliance on this section of the Pinelands Protection Act is misplaced. Its interpretation unduly extends the statutory language beyond the thrust of the legislation in order to penalize "nonconforming" municipalities in a way not authorized by statute. Indeed the Commission's action in adopting the disputed resolution here runs counter to the requirement of N.J.S.A. 13:18A-8 h to provide for "maximum feasible local government and public participation in the management of the pinelands area." See also N.J.S.A. 13:18A-8 i. Although N.J.S.A. 13:18A-12 c empowers the Commission to adopt and enforce such rules and regulations as may be necessary to implement the minimum standards in the CMP, we find no basis for reading the quoted language as authority to preclude any and all participation by any county or municipality whether their master plans or land use ordinances have or have not been approved. It is one thing to say that because a municipality lacked approval of its master plan and zoning ordinance it cannot act on development applications except with respect to matters not regulated by the CMP (such as parking, traffic and lighting conditions), but quite another to say that ipso facto the municipality also is deprived of any standing to participate in any fashion to assist the Commission in reaching a reasoned and proper determination on a development application. Indeed, the position taken by the planning boards here appears to be aimed at insuring compliance with the minimum standards of the CMP, while the Commission's position would make it more difficult to have deficiencies in achieving such standards brought to its attention.
*126 Moreover, we note that the regulatory scheme in existence prior to the Commission's passage of Resolution 84-20 contemplated participation by Pinelands municipalities without regard to the status of their zoning ordinances. Indeed, when Hamilton's and Egg Harbor's planning boards filed their "requests for reconsideration,"[13] of the subject development plan they were following not only the past practice that they had previously utilized but that adopted by the Commission. This past practice was the method by which an uncertified municipality would get its first opportunity under the regulations to challenge a development application. Indeed, under the Commission's regulatory scheme it may have been the only available method to challenge a development application or staff approval. Absent such challenge here there was not only no opportunity for uncertified municipalities to participate in the development approval process, and no opportunity for public review of the subject development application, see infra, but also apparently no requirement for presentation to the Commission for final action as required by N.J.S.A. 13:18A-14 f and 13:18A-15.
We reject the Commission's determination that uncertified municipalities are not "interested persons" entitled to reconsideration of development approvals pursuant to N.J.A.C. 7:50-4.17. The definition section of the regulations provides that "`Person' means an individual, corporation, public agency, business trust, partnership, association, two or more persons having a joint or common interest, or any other legal entity." N.J.A.C. 7:50-2.11. The term "interested person" is defined as "any persons whose right to use, acquire or enjoy property is or may be affected by any action taken under this Plan, or whose right to use, acquire or enjoy property under this Plan or under any other law of this State or of the United States has been denied, *127 violated or infringed upon by an action or a failure to act under this Plan." Id. There is no doubt that the term "person" and "interested persons" encompasses municipalities, as well as counties, cf. N.J.S.A. 1:1-2, and that the statute and the regulations (CMP) contemplate participation by municipalities and other governmental agencies in the development approval process. See, e.g., N.J.S.A. 13:18A-8 h. Furthermore, we are satisfied that the municipalities here fall within the ambit of the term "any person" who is entitled to seek judicial review. N.J.S.A. 13:18A-20. Certainly a municipality may be "interested" or even "aggrieved" when a major development is proposed within its borders by private developers.
Our courts have historically taken a liberal approach to the issue of standing "in land use planning as well as in other actions particularly where matters of public policy are at stake." Dover Twp. v. Dover Twp. Bd. of Adjustment, supra, 158 N.J. Super. at 411 n. 2. See, e.g., Southern Burlington Cty. NAACP v. Mount Laurel Twp. 92 N.J. 158, 337 (1983); Crescent Park Tenants Ass'n v. Realty Eq. Corp. of New York, 58 N.J. 98, 101 (1971); Walker, Inc. v. Borough of Stanhope, 23 N.J. 657, 660-661 (1957); Urban League of Essex Cty. v. Mahwah Twp., 147 N.J. Super. 28, 33 (App.Div. 1977), certif. den. 74 N.J. 278 (1977). In addition to the land use ramifications associated with Pinelands development approvals, it is clear from both the federal and State legislation that the protection of the Pinelands area is a significant public policy consideration which mandates input from the affected municipalities and counties.
The statutory framework seeks to assure at every level that the purposes of the Pinelands Protection Act are met. Those purposes would hardly be aided by the exclusion of a governmental agency merely on the basis that it had not yet conformed its master plan and land use ordinance to the CMP. It follows that if there is a basis for judicial review, certainly there is a basis for the Planning Boards here to seek participation *128 or "reconsideration" under the procedures and regulations of the Commission as well as the Administrative Procedure Act.

B.
We now turn to the issue of whether Hamilton and Egg Harbor are entitled to a hearing with respect to the Commission's approval of respondents' development application. We note initially that apart from any constitutional right that uncertified municipalities may have to a hearing, the Pinelands Protection Act of necessity envisions such a right.
The only specific provision of the Pinelands Protection Act addressing the subject of whether a hearing is required in the approval process is N.J.S.A. 13:18A-15 which states:
Subsequent to the adoption of the comprehensive management plan, the commission is hereby authorized to commence a review, within 15 days after any final municipal or county approval thereof, of any application for development in the pinelands area. Upon determining to exercise such authority, the commission shall transmit, by certified mail, written notice thereof to the person who submitted such application. The commission shall, after public hearing thereon, approve, reject, or approve with conditions any such application within 45 days of transmitting such notice; provided, however, that such application shall not be rejected or conditionally approved unless the commission determines that such development does not conform with the comprehensive management plan or the minimum standards contained therein, as applicable to the county or municipality wherein such development is located, or that such development could result in substantial impairment of the resources of the pinelands area. Such approval, rejection or conditional approval shall be binding upon the person who submitted such application, shall supersede any municipal or county approval of any such development, and shall be subject only to judicial review as provided in section 19 of this act.
Under this section, if the municipality's master plan and implementing land use ordinance has been approved by the Commission (see N.J.S.A. 13:18A-12 c)[14] a development application would be submitted to that municipality which could then approve or disapprove the application. If the municipality approves the application, the Commission under the quoted *129 section may decide to review that approval. Parenthetically we note that neither the statute nor the regulations provide for Commission review if the municipality disapproves the application. If the Commission does elect to review a development approval, the plain language of the statute requires that a hearing be conducted. The parameters of that hearing and the notice requirements are not mentioned in the statute, although the CMP provides that when the Commission elects to review an approval, the applicant or the approving agency may request that a hearing be held before an Administrative Law Judge. N.J.A.C. 7:50-4.27(b); N.J.A.C. 7:50-4.81.
N.J.S.A. 13:18A-15 does not expressly address whether a hearing is required when the Commission exercises its authority to review directly a development application which proposes development in an uncertified municipality. It is apparent, however, that this section requires that if the Commission is to review municipal approval of a development application it must conduct a hearing. It is generally considered that the Legislature is cognizant of due process and fundamental fairness requirements, as well as the provisions of its prior legislation, such as the APA (see N.J.S.A. 13:18A-6 j), and the Open Public Meetings Act, N.J.S.A. 10:4-6 et seq. See Brewer v. Porch, 53 N.J. 167, 174 (1969); In re Keogh-Dwyer, 45 N.J. 117, 120 (1965). Awareness of the APA and the Open Public Meetings Act militates toward the conclusion that the Legislature intended a hearing to be conducted by the Commission whenever the Commission entered the approval process. See Jordan v. Horsemen's Benevolent & Protective Ass'n, 90 N.J. 422, 435 (1982). A hearing could be required by due process and fundamental fairness requirements. Provision for a hearing would be particularly appropriate under the circumstances of the instant case, where Hamilton and Egg Harbor, so-called uncertified municipalities, are effectively denied any participation in the approval process.
Respondents take the position that municipalities with uncertified zoning ordinances are not only denied the power to *130 approve or disapprove a development application, but are not entitled to a hearing upon final development approval by the Commission. We are of the view that this is not what was contemplated by the Legislature. Such a result would not only be anomalous under this statute, but a denial of due process. The Pinelands Protection Act does not distinguish between municipalities with certified or uncertified zoning ordinances. That distinction is purely a creation of the Commission's regulations and resolutions. As we noted earlier, N.J.S.A. 13:18A-12 c does authorize the Commission to adopt and enforce such rules and regulations as it deems necessary to implement the CMP in the event a municipality or county does not conform its master plan or land use ordinance to the CMP. That section of the Act, however, does not authorize the Commission effectively to ignore municipalities with uncertified ordinances. Indeed, insofar as N.J.S.A. 13:18A-12 c and other provisions of the Act reflect the intent of the Legislature to assure that the minimum standards of the CMP are implemented, the participation of the affected municipalities, whether their zoning ordinances are certified or uncertified, would appear to aid in carrying out that legislative intent. This is especially so here where the reconsideration applications of Egg Harbor and Hamilton have raised substantial questions of whether the project proposed by the developers complies with the minimum standards of the CMP.
We also note that a municipality could not approve a development application without a public hearing if it was considering the application in the first instance under its zoning powers. See N.J.S.A. 40:55D-9 and N.J.S.A. 40:55D-10. It can hardly be a logical result to conclude that where the municipality is "uncertified" and thus precluded from exercising its zoning authority the decision to have the Commission review the matter and to hold a hearing at all would depend solely on staff recommendations no matter what the extent of the development proposal.
The attempt by the Commission to "penalize" municipalities which have not conformed their master plans and land use *131 ordinances to the CMP by eliminating their opportunity to participate in the approval process is not what was contemplated by the Legislature and goes beyond the statutory framework. We are satisfied that the public hearings required by N.J.S.A. 13:18A-15 are likewise necessary in the instant case where the Commission must review development applications in uncertified municipalities. Such public hearings will preserve the requirements of due process.
Even if we were not to construe section 15 as requiring a hearing, there would still be a requirement for a hearing. We conclude that the actions of the Commission in approving or disapproving a Pinelands development application under the statutory scheme is quasi-judicial in nature, and thus subject to procedural due process principles. Juzek v. Hackensack Water Co., 48 N.J. 302, 314 (1966); In re Plainfield-Union Water Co., 11 N.J. 382, 392-393 (1953); Handlon v. Town of Belleville, 4 N.J. 99, 105 (1950); Kelly v. Hackensack Meadowlands Development Comm'n, 172 N.J. Super. 223, 228-229 (App.Div. 1980), certif. den. 85 N.J. 104 (1980); In re Application of Modern Industrial Waste Service, 153 N.J. Super. 232, 238-239 (App. Div. 1977); Jersey City v. Dept. of Civil Service, 57 N.J. Super. 13, 45 (App.Div. 1959); New Jersey Mfrs. Cas. Ins. Co. v. Holderman, 54 N.J. Super. 260, 266 (App.Div. 1959). That is precisely the type of proceeding that is involved when the Commission is required to pass upon development applications. What is essentially involved with respect to development approval under the Pinelands Protection Act is land use regulation. Applications for development approvals thus take on the quasi-judicial nature of zoning variance proceedings. We reject respondents' argument that the Commission is acting in quasi-legislative and executive or ministerial capacities when passing on development applications under the procedures specified in the Pinelands Protection Act.
In Jersey City v. Dept. of Civil Service, supra, we noted:
The question of whether an administrative agency is required to grant a hearing to affected parties before issuing an order is generally determined by *132 inquiring whether the action is of a quasi-judicial nature, as opposed to an action of a legislative or executive (sometimes called ministerial) nature. Handlon v. Town of Belleville, 4 N.J. 99 (1950); New Jersey Manufacturers Cas. Ins. Co. v. Holderman, 54 N.J. Super. 260 (App.Div. 1959). If the action partakes of the judicial, our traditions of due process and fair play require that affected parties be afforded the benefits of notice and a hearing, along with the other essential concomitants of judicial action. [57 N.J. Super. at 45.]
Handlon v. Town of Belleville, supra, discussed the considerations in determining whether actions of a governmental agency constitute a quasi-judicial function requiring a hearing:
The quality of the act rather than the character of the agency exercising the authority is determinative of the nature of the power and the need for procedural due process. Where the administrative tribunal is under a duty to consider evidence and apply the law to the facts as found, thereby exercising a discretion or judgment judicial in nature on evidentiary facts, the function is ordinarily quasi-judicial and not ministerial. The classification depends upon the nature of the act and the controls placed upon the exercise of the power in the legislative grant. [4 N.J. at 105.]
Applying these principles to the instant case, we conclude that the Commission's authority to review and approve, reject or modify a development application is properly characterized as quasi-judicial rather than quasi-legislative. The Commission is required to review and consider the evidence presented, find facts and determine whether the proposed development is consistent with the CMP or warrants a nonintrusive deviation therefrom. See N.J.S.A. 13:18A-10 c. The CMP refers to the fact-finding process, see e.g., N.J.A.C. 7:50-4.28, although the regulations are not wholly consistent with either the statute or due process requirements. Moreover, in the approval of the developers' application by the assistant director, he made "findings of fact" and conclusions drawn from them regarding the effect of and on the CMP. The process utilized was adjudicatory in nature. The Commission in such instances is not acting in its rule-making capacity, which, as we noted in Consolidation Coal Co. v. Kandle, 105 N.J. Super. 104, 113 (App.Div. 1969), aff'd o.b. 54 N.J. 11 (1969), is a quasi-legislative function:
In its rule-making capacity, an administrative agency is nothing more than a minor legislative body considering proposed legislation under a grant of power:
"* * * Administrative rule-making remains in essence, however, the enactment of legislation of general application prospective in nature. The object is *133 not legislation ad hoc or after the fact, but rather the promulgation, through the basic statute and the implementing regulations taken as a unitary whole, of a code governing action and conduct in the particular field of regulation so those concerned may know in advance all the rules of the game, so to speak, and may act with reasonable assurance. * * *" Boller Beverages Inc. v. Davis, 38 N.J. 138, 151-152 (1962).
When an administrative agency acts legislatively, it should conduct its proceedings as does a legislature. The strictures of judicial procedure are wholly unrelated and unadapted to the promulgation of rules and regulations. See generally, Fuchs, "Procedure in Administrative Rule-Making," 52 Harv.L. Rev. 259 (1938); Gellhorn and Byse, Administrative Law, Cases and Comments (4th ed. 1960), p. 725 et seq.

Moreover, in Kelly v. Hackensack Meadowlands Development Comm'n, supra, this court implicitly recognized that the grant of a variance is quasi-judicial in nature. We there recognized that the adoption of a master plan or amendment thereof was, however, of a different character when we said:
Appellants' position is largely predicated upon their view that in adopting master plan amendments, HMDC is performing a quasi-judicial function implicating the whole range of procedural prescriptions attendant thereto, such as a requirement of individual notice to interested persons, the right to examine and cross-examine witnesses and the obligation of the agency to act on the basis of findings of fact and conclusions of law supported by the record. In short, appellants draw an analogy to an exercise by a local board of adjustment of the variance power. This analogy is inapposite. We regard it as perfectly clear that in adopting or amending its master plan the HMDC is performing a purely legislative function, analogous if to anything at all, to a municipal governing body's power to zone and rezone. [172 N.J. Super. at 228]
Courts of other states have expressly held that the variance power is adjudicative in nature requiring application of due process principles. E.g., Horn v. County of Ventura, 24 Cal. 3d 605, 156 Cal. Rptr. 718, 596 P.2d 1134 (1979).
As we view it the variance power analogy implicitly adopted by this court in Kelly and expressly adopted in Horn applies in this case. Under the provisions of the Pinelands Protection Act, the Commission is authorized to adopt and enforce regulations designed to implement the minimum standards of the CMP. The adoption of those regulations is clearly legislative in nature. The Act requires the CMP to provide for minimum land use standards. N.J.S.A. 13:18A-8 d. Enforcement thereof would be for the most part ministerial. By contrast, however, *134 when the Commission reviews or is required to review a development application, or even when its staff does preliminary investigation, it is ultimately the Commission which must determine whether the proposed development complies with the minimum standards of the CMP. In making this determination it must, upon finding the application complete, make findings of fact and conclusions of law. See N.J.S.A. 13:18A-10 c and 15. Cf. N.J.S.A. 13:18A-14 b and c. The clear legislative intent is that approval of development projects in the Pinelands area are not to be lightly given. The strict standards for compliance with the CMP bears this out as does the background of the operative legislation. The Commission's functions in considering development applications are thus generally akin to land use regulation and, specifically, to the exercise of the variance power. Such functions are peculiarly quasi-judicial in nature. See In re Plainfield-Union Water Co., supra, 11 N.J. at 392-393; Jersey City v. Civil Service Dept., supra, 57 N.J. Super. at 45.
It is this quasi-judicial function which sets the approval procedure undertaken by the Commission apart from the ministerial function of issuing permits or licenses in the more usual sense. Likewise, respondents' reliance on the riparian permit procedure is inapposite. Under the riparian laws permits to use State lands may be issued by the State to upland owners. N.J.S.A. 12:3-7 and 12:3-7.1. See also N.J.S.A. 12:3-22. Such permits are purely a matter of grace and the State is not required to issue same. Le Compte v. State, 65 N.J. 447 (1974); Taylor v. Sullivan, 119 N.J. Super. 426 (App.Div. 1972), certif. den. 62 N.J. 70 (1972). Issuance of such permits under the relevant statutes is an executive function.
By way of recapitulation, we conclude that the Pinelands Protection Act itself clearly evinces a legislative intent that hearings be conducted when the Commission reviews a development application. Moreover, even if we were not to so construe the Act, the quasi-judicial functions of the Commission with respect to land use regulation in the Pinelands area within the *135 specific statutory framework confronting us mandates that hearings be conducted.

C.
We also observe in passing that the Pinelands Protection Act and the CMP fail to provide the public with notice and an adequate opportunity to be heard in the development approval process.[15] Basic requirements of procedural due process include adequate notice and an opportunity to be heard. See Nicoletta v. North Jersey Dist. Water Supply Commission, 77 N.J. 145, 162 (1978); Avant v. Clifford, 67 N.J. 496, 525 (1975); Merry Heart Nursing & Convalescent Home, Inc. v. Dougherty, 131 N.J. Super. 412, 419-420 (App.Div. 1974); Dept. of Law & Public Safety v. Miller, 115 N.J. Super. 122, 126 (App.Div. 1971).
In the instant case the Commission approved respondent's development application without ever providing the public with notice or an opportunity to be heard. Although the CMP does provide for notice of public hearings, those notice procedures *136 are only applicable if the Commission holds a public hearing. As we previously noted, only N.J.S.A. 13:18A-15 addresses the need for a hearing. Under that section a public hearing is required only if the Commission decides to review the approval of a development application by a municipality or county. Section 15 does not, however, speak to whether a public hearing is required under the circumstances of this case, i.e., when the Commission exercises its power to review directly a development application in a municipality whose master plan and land use ordinances have not been conformed to the CMP. In light of our holding that section 15, properly construed to save the statute from defect, see Jordan v. Horsemen's Benevolent & Protective Ass'n, supra, 90 N.J. at 435, requires a public hearing[16] whenever the Commission reviews a development application, this deficiency is obviated.
We also note that insofar as N.J.S.A. 40:55D-9 and 10 would require a public hearing where a "certified" municipality exercised its authority to review directly a development application the public's right to notice and an opportunity to be heard is preserved.
Under the circumstances of this case, where the proposed project is so extensive and public interests as well as property rights are likely to be affected, public hearings are necessary to fulfill the obvious Legislative goal of assuring that any development in the Pinelands area best suits the needs of those sensitive lands and resources.

IV.
In summary, we conclude that the municipalities here have standing. The regulations of the Commission are defective with respect to notice to the public of development applications. Furthermore, to the extent that the action of the Commission's staff in approving, rejecting or modifying such applications would allow a final approval without the Commission *137 holding a hearing or making a record, and most importantly, without the final decision of the Commission being made at a public hearing, it would appear to go beyond the statutory authorization. To the extent that the regulations authorize the action of the staff to be final action of the Commission, they are inconsistent with the statute and ineffective.
The determination of the Commission refusing to allow Hamilton and Egg Harbor to participate in an administrative hearing is reversed. The appeals are remanded to the Commission with direction to refer the matters to the Office of Administrative Law for further proceedings in connection with their requests for "reconsideration," unless the Commission decides to hear the matter itself. See In re Uniform Administrative Procedure Rules, 90 N.J. 85, 104-105 n. 8 (1982).[17] Resolution 84-20 is declared to be of no force and effect not only insofar as it purports to deny uncertified communities any standing whatsoever, but as an ineffective exercise of the Commission's rule-making powers.
NOTES
[1] It was represented to us at oral argument that Hamilton's zoning ordinance is in the process of being certified and that it was expected to be certified in March 1985. We have since been advised that this occurred on March 8, 1985.
[2] The approval document, which apparently constituted the final approval for the particular development involved, consisted of five pages. The "Findings of Fact" were recited on the equivalent of one typewritten page, followed by two pages which constituted the "conclusion" of the assistant director. The last 1 1/2 pages thereof consisted of a lengthy recitation of the "Reconsideration" procedure for "Any person who is aggrieved by this determination...." The last page consisted solely of the signature block and signature of William Harrison as "Assistant Director" and a listing of where 12 copies of the letter were sent. See infra n. 4.
[3] N.J.A.C. 7:50-5.13(g) defines such areas as:

areas of existing growth or lands immediately adjacent thereto which are capable of accommodating regional growth influences while protecting the essential character and environment of the Pinelands, provided that the environmental objectives of subchapter 6 [N.J.A.C. 7:50-6] are implemented through municipal master plans and land use ordinances.
[4] Although not specifically raised by this appeal, we question the adequacy of the so-called "Findings of Fact" made by the assistant director. The findings made by the assistant director here are not only sparse and incomplete, but also conclusory as we have previously noted. See supra n. 2. The "findings" for a project of the magnitude proposed by respondent developers, contained in little more than one page, would hardly have provided a basis for adequate judicial review. Adequate, complete and specific findings are required, not conclusory statements. See Commons v. Westwood Zoning Board of Adjustment, 81 N.J. 597, 609 (1980); Gougeon v. Board of Adjustment of Borough of Stone Harbor, 52 N.J. 212, 223 (1968), app. after remand, 54 N.J. 138 (1969). Cf. Crema v. New Jersey Dept. of Environmental Protection 182 N.J. Super. 445, 452-454 (App.Div. 1982), mod. and aff'd 94 N.J. 286 (1983); Crema v. New Jersey Dept. of Environmental Protection, 192 N.J. Super. 505, 515-516 (App.Div. 1984), certif. den. 96 N.J. 306 (1984). Where the Commission undertakes to determine the merits of an application and its conformance with the minimum standards of the CMP, it must itself establish a record of compliance with the statutory provisions so that judicial review of its actions can be had. See, e.g., N.J.S.A. 13:18A-8 through 10 and N.J.S.A. 13:18A-20.
[5] Hamilton also asserted that the Pinelands Development Approval should have required the developer to obtain local site-plan review of matters not covered by the approval. This is not specifically raised on this appeal. Respondent Commission acknowledges that whether a municipality's zoning ordinance is certified or uncertified does not remove from local agencies the authority to exercise regulatory control over matters not regulated by the CMP, such as parking, traffic or lighting conditions. See N.J.A.C. 7:50-4.12 and Fine v. Galloway Tp. Committee, 190 N.J. Super. 432, 442 (Law Div. 1983).
[6] The Commission did not reach such a conclusion regarding counties.
[7] N.J.A.C. 7:50-2.11 defines "interested person" as:

[A]ny persons whose right to use, acquire or enjoy property is or may be affected by any action taken under this Plan, or whose right to use, acquire or enjoy property under this Plan or under any other law of this State or of the United States has been denied, violated or infringed upon by an action or a failure to act under this Plan.
[8] Proceedings, apparently instituted on the Commission's request for an advisory opinion, were subsequently conducted before an ALJ regarding the procedure to be utilized where so-called uncertified municipalities were involved. Various developers or developer associations participated and urged a lack of standing. The result was a January 28, 1985 "Report and Recommendation" by an ALJ who had resigned effective December 21, 1984. Presumably his report was issued pursuant to an order entered under authority of N.J.S.A. 52:14F-5 m. That report indicated that although uncertified municipalities had no standing to contest the action of Commission staff, there should nevertheless be an opportunity for them to provide input on applications. He suggested that the Commission's regulations be revised. Although the respondents argue the position in the report, we note that it was issued subsequent to the action which is the subject of this appeal. Subsequent to oral argument we were advised that on March 8, 1985 the Commission adopted the ALJ's report. We have not been advised of any appeal therefrom.
[9] We note that although N.J.S.A. 13:18A-14 f authorizes the executive director to review all requests or applications for a Commission finding pursuant to that section, and make appropriate recommendations, that section nonetheless provides "that the commission shall take final action on all such requests or applications." However, neither the executive director nor the staff has authority under the statute to give final approval to applications. Their function is to make recommendations to the Commission which must make the final decisions.
[10] But see N.J.S.A. 13:18A-14 f, -15, -20 and supra n. 9.
[11] However, even if that were so and the statute did not require to the contrary as we hold it does, the Commission did not comply with the Administrative Procedure Act, N.J.S.A. 52:14B-1, et seq.
[12] Now The Port Authority of New York and New Jersey. See N.J.S.A. 32:1-4.1 for New Jersey's enactment.
[13] The "reconsideration" procedure utilized under the Commission's regulations is somewhat unique. It is essentially an after-the-fact proceeding following a submission by a developer of an application and supporting materials and an uninhibited opportunity for review with the Commission staff.
[14] The term "certified" is used in the Commission's regulations to describe such a municipality. See N.J.A.C. 7:50-3.
[15] Because the Commission took the position that uncertified municipalities have no standing, and because there appeared to be a deficiency in the Pinelands Protection Act itself regarding the sending of notices for development approval to anyone other than the applicant (N.J.S.A. 13:18A-15), and the lack of notice to other interested persons who might become aggrieved, we requested supplemental letter briefs on the due process aspects of the statute. We are aware that under N.J.A.C. 7:50-4.31 it is provided that if the Executive Director determines that the Commission should review final local approval the Commission is required to conduct a public hearing under the procedures set out in N.J.A.C. 7:50-4.3. Subsection (b)2 of N.J.A.C. 7:50-4.3 requires notice of the hearing to be given to: the applicant; to any person who has filed a written request with the Commission and paid an annual fee to receive notice; the record owner of land on which the development is proposed; the clerk of the county or municipal planning board and environmental commission, if any, with jurisdiction over any property on which development has been proposed or which would be directly affected by a map amendment; land owners within 200 feet of any border of the property proposed for development and publication of the notice in a newspaper having general circulation in the area, all at least 10 days in advance of the hearing. Posting is also required on the parcel proposed for development.
[16] See the Open Public Meetings Act (Sunshine Act), N.J.S.A. 10:4-6, et seq.
[17] Because Hamilton Township's master plan and zoning ordinances have now been certified, it may be that developers would now be required to submit their application to the municipality and that Hamilton would now review the application directly.