NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-1685-15T1
               A-2705-15T1
               A-2706-15T1

IN THE MATTER OF THE PETITION
OF SOUTH JERSEY GAS COMPANY FOR
A DETERMINATION PURSUANT TO THE
PROVISIONS OF N.J.S.A. 40:55D-19.

IN THE MATTER OF THE PETITION
OF SOUTH JERSEY GAS COMPANY FOR
A CONSISTENCY DETERMINATION FOR
A PROPOSED NATURAL GAS PIPELINE.

---

| APPROVED FOR PUBLICATION |
| :---: |
| November 7, 2016 |
| APPELLATE DIVISION |

---

Argued October 11, 2016 — Decided  November 7, 2016

Before Judges Yannotti, Fasciale and Gilson.

On appeal from the Board of Public Utilities, No. GO13111049, and from the Executive Director of the Pinelands Commission, Application No. 2012-0056.001.

Mariel R. Bronen of the New York bar, admitted pro hac vice, argued the cause for appellant Pinelands Preservation Alliance (Dechert LLP, attorneys; Ms. Bronen, George G. Gordon and Roxanne R. Wright, on the brief).

Renée Steinhagen argued the cause for appellants New Jersey Sierra Club and Environment New Jersey (New Jersey Appleseed Public Interest Law Center, attorneys; Ms. Steinhagen, on the brief).

Ted Nissly (Fried, Frank, Harris, Shriver & Jacobson LLP) of the Washington, D.C. bar, admitted pro hac vice, argued the cause for amici curiae Brendan T. Byrne, James J. Florio, and Christine Todd Whitman (Mr. Nissly

and Cole Schotz, P.C., attorneys; Christopher P. Massaro and Mark J. Pesce, of counsel and on the brief; Mr. Nissly, Douglas Baruch (Fried, Frank, Harris, Shriver & Jacobson LLP) of the Washington, D.C. bar, admitted pro hac vice, and Mary Elizabeth Phipps (Fried, Frank, Harris, Shriver & Jacobson LLP) of the New York bar, admitted pro hac vice, on the brief).

Caroline Vachier, Deputy Attorney General, argued the cause for respondents New Jersey Board of Public Utilities and New Jersey Pinelands Commission (Christopher S. Porrino, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Ms. Vachier, Helene P. Chudzik, Geoffrey R. Gersten and Timothy P. Malone, Deputy Attorneys General, on the brief).

Ira G. Megdal argued the cause for respondent South Jersey Gas Company (Cozen O'Connor, P.C., attorneys; Mr. Megdal, Peter J. Fontaine and Mark A. Lazaroff, on the brief).

John G. Valeri, Jr., argued the cause for respondent-intervenor R.C. Cape May Holdings, L.L.C. (Chiesa Shahinian & Giantomasi, P.C., attorneys; Mr. Valeri and Michael K. Plumb, on the brief).

James W. Glassen, Assistant Deputy Rate Counsel, argued the cause for respondent Division of Rate Counsel (Stephanie A. Brand, Director, New Jersey Division of Rate Counsel, attorney; Mr. Glassen, on the brief).

The opinion of the court was delivered by

YANNOTTI, P.J.A.D.

These appeals arise from a proposal by South Jersey Gas Company (SJG) to construct a natural gas pipeline through several

municipalities in the Pinelands Area. On December 14, 2015, Nancy Wittenberg, Executive Director of the Pinelands Commission (Commission), issued a letter finding that SJG's proposed pipeline was consistent with the minimum standards of the Pinelands Comprehensive Management Plan (CMP), N.J.A.C. 7:50-1.1 to -10.35. In addition, on December 16, 2015, the Board of Public Utilities (Board) granted a petition by SJG pursuant to N.J.S.A. 40:55D-19, and determined that the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, and any local governmental development regulations adopted pursuant to the MLUL, shall not apply to the construction or operation of the pipeline.

Pinelands Preservation Alliance (PPA) and the New Jersey Sierra Club and Environment New Jersey (jointly, Sierra Club) appeal from the Board's December 16, 2015 decision. Sierra Club also appeals from Wittenberg's determination.

For the reasons that follow, we remand the matter to the Commission for further proceedings and a final decision on whether SJG's proposed pipeline is consistent with the minimum standards of the CMP. We also affirm the Board's decision granting SJG's petition pursuant to N.J.S.A. 40:55D-19, but remand the matter to the Board for entry of an amended order stating that approval of the petition is conditioned upon a final decision of the Commission that the pipeline conforms to the CMP.

We briefly summarize the pertinent facts and procedural history. The B.L. England Generating Station (BLE) at Beesley's Point in Upper Township, Cape May County, is a 447-megawatt electricity-generating facility that is powered using coal, oil, and diesel fuel. BLE provides electric power to the Pennsylvania, New Jersey, and Maryland markets. In 2006, the New Jersey Department of Environmental Protection (DEP) ordered Atlantic City Electric Company (ACE), which was then the owner of BLE, to meet certain emissions standards, repower, or shut BLE down. In 2007, ACE sold BLE to RC Cape May Holdings (RC), an affiliate of a Delaware limited liability company, Rockland Capital.

In 2012, DEP amended its 2006 order, and gave RC until 2016 to comply. RC decided to repower the facility using natural gas provided by SJG, which is a public utility that provides natural gas to approximately 360,000 customers within Camden, Cape May, Cumberland, Gloucester, and Salem Counties. SJG proposed to construct a pipeline that consists of 1) a "dedicated line" that would run about eight miles in Upper Township, from an interconnect point/regulator station to the metering station at BLE; and (2) a "reliability line" that would run about fourteen miles from Maurice River Township to the interconnect point/regulator station in Upper Township, where it would connect

to SJG's existing transmission and distribution systems and serve as a secondary source of supply for SJG's customers in Southern Jersey during a natural gas emergency.

The pipeline would be constructed within three state regulatory pinelands management areas: the Pinelands Rural Development Area, the Pinelands Village, and the Pinelands Forest Area. Under the CMP, public service infrastructure is a permitted land use in the Rural Development Areas, N.J.A.C. 7:50-5.26(b)(10), and in the Pinelands Villages, N.J.A.C. 7:50-5.27(a)(1). Public service infrastructure is, however, only permitted in the Forest Areas if "intended to primarily serve only the needs of the Pinelands." N.J.A.C. 7:50-5.23(b)(12).

On July 24, 2012, SJG filed a development application with the Commission, seeking authorization and approval to construct the pipeline. The Commission's staff deemed the application complete on July 29, 2013, but found that the proposed project did not meet the land use requirements in the CMP for the Forest Areas. The Commission's staff informed SJG that it had not established that the pipeline was "intended to primarily serve only the needs of the Pinelands" because it would serve SJG customers outside of the Pinelands.

On April 29, 2013, the Board issued an order authorizing SJG to impose tariffs and allocate costs of constructing the pipeline.

In addition, in June 2013, the Board granted SJG's petition for issuance of an order finding that the proposed pipeline complied with N.J.A.C. 14:7-1.4, a regulation that governs the siting of natural gas pipelines, and requires compliance with certain federal safety regulations.

On November 4, 2013, SJG filed a petition with the Board, seeking an order pursuant to N.J.S.A. 40:55D-19, declaring that the MLUL and any ordinance or regulation made under the authority of the MLUL shall not apply to the proposed pipeline project (the MLUL petition). The Board designated Commissioner Joseph L. Fiordaliso to serve as hearing officer, and Commissioner Fiordaliso thereafter held the first public hearing on SJG's MLUL petition.

Meanwhile, the Commission's staff and the Board's staff negotiated and drafted a memorandum of agreement (MOA), to allow the project to be built in the Pinelands Area even though staff had determined that it did not comply with the minimum standards of the CMP. N.J.A.C. 7:50-4.52(c)(2) provides that the Commission may enter into an intergovernmental agreement with any Federal, State, or local government, that allows "such agency" to carry out "specified development activities that may not be fully consistent with" N.J.A.C. 7:50-5 (minimum standards for land use and intensity), and N.J.A.C. 7:50-6 (management programs and minimum

A-1685-15T1

standards for development and land use in the Pinelands).[1]

On December 9, 2013, the Commission's staff held a public hearing and accepted written comments on the completed draft MOA. At the hearing, representatives from PPA and Sierra Club objected to the project. Members of the public also submitted comments opposing and supporting the project. In addition, four former Governors — Governors Brendan T. Byrne, Thomas Kean, James J. Florio, and Christine Todd Whitman - opposed the project, taking the position that it would compromise the integrity of the CMP.

On January 3, 2014, Wittenberg issued a report recommending that the Commission approve the MOA. She explained that the project would serve two purposes: (1) permitting the repowering of BLE; and (2) providing SJG with the ability to supply natural gas to its customers in Atlantic and Cape May counties in emergencies. At the Commission's meeting on January 10, 2014, the Commission members considered a resolution authorizing Wittenberg to execute the MOA.

The Commission has fifteen members. N.J.S.A. 13:18A-5(a). Seven members voted in favor of the resolution, seven members voted against it, and one member recused himself from voting on

---

[1] It should be noted that although the proposed MOA was an agreement between the Commission and the Board, it was SJG, not the Board, which would be engaged in the "specified development" activity.

the resolution. Because the Commission's by-laws provide that the affirmative vote of eight members is required for the Commission to take action on a motion or resolution, the MOA was not approved. SJG thereafter filed a notice of appeal from the Commission's failure to take action approving the MOA. In July 2014, DEP agreed that RC would have until May 2017 to comply with its 2006 order.

In May 2015, SJG submitted a revised pipeline development application to the Commission, along with additional information intended to show that the pipeline could be built in the Forest Area because it was "intended to primarily serve only the needs of the Pinelands." N.J.A.C. 7:50-5.23(b)(12). SJG noted that the project had been modified to reduce the impacts in the Forest Area by prohibiting additional interconnections with the line and relocating the interconnect point/regulator station out of the Forest Area.

In addition, SJG replaced three miles of open-cut installation with horizontal-directional drilling. SJG disclosed its previously-confidential agreement with RC, which requires SJG to provide RC an uninterrupted supply of natural gas to BLE for at least 350 days per year. SJG also provided a report from PJM Interconnection, L.L.C. (PJM), which stated that continued operation of BLE was vital to the relevant service area.

In August 2015, the Commission's Director of Regulatory

Programs found that the application was complete and issued a Certificate of Filing (COF), which stated in part:

> Based on review of the application, including newly submitted information, materials in the record and review of prior applications, the applicant has demonstrated that the proposed gas main is consistent with the permitted use standards of the CMP. Specifically, the proposed pipeline is designed to transport gas to an existing facility, the [BLE] plant (built in 1963) that is located in the Pinelands.

Wittenberg advised the Commission that after the issuance of the COF, SJG could continue its MLUL proceeding before the Board. Wittenberg told the Commission that after the Board's proceedings, staff would review the application another time to ensure compliance with the CMP.

On August 21, 2015, Wittenberg wrote to the Board's Executive Director and enclosed a copy of the COF. She requested copies of any petitions that SJG filed with the Board regarding the pipeline project, including SJG's previously-filed MLUL petition, all associated hearing and meeting notices and transcripts, copies of all staff reports, and any draft orders pertaining to SJG's proposed pipeline project. In October 2015, Fiordaliso conducted two more public hearings and an evidentiary hearing on the MLUL petition. PPA was permitted to participate in the evidentiary hearing.

In a letter dated December 14, 2015, Wittenberg informed the Board's Executive Director that "[b]ased on [the] Pinelands Commission['s] staff expertise and experience administering the CMP and our review of the record, the prior finding of consistency with the CMP in the [COF] issued on August 14, 2015 remains unchanged." She noted that any order by the Board authorizing SJG's installation of its pipeline had to be consistent with the minimum standards in the CMP rules, since that development would occur in the Pinelands Area.

Wittenberg reviewed the information she had received from the Board and addressed the public's comments concerning the project's consistency with the CMP. She rejected the claim that her staff's initial finding that SJG's project was inconsistent with the CMP standards in N.J.A.C. 7:50-5.23 could not be changed. Wittenberg explained that SJG had revised its proposal by: (1) moving the proposed interconnect point/regulator station from the Forest Area and to Pinelands Village; and (2) adding a new provision limiting the company's ability to connect new customers in the Forest Area.

SJG also had submitted new and updated information that previously had not been available for review. She wrote:

> Specifically, . . . the proposed pipeline [will] be available to serve the [BLE] plant 95% of the time. The proposed project will

also provide an ancillary benefit of providing redundant gas service to those customers of [SJG] who live both inside and outside of the Pinelands Area during an operational upset. Given that the primary purpose of the proposed project is to provide gas to the [BLE] plant 95% of the time, a fact not available at the time of the Executive Director's initial decision, Commission staff found that the [SJG] had demonstrated the project's consistency with the Forest Area use standards of the Pinelands CMP, i.e., that the proposed project primarily serves only the needs of the Pinelands by serving the needs of a facility located in the Pinelands 95% of the time.

Wittenberg rejected the claim that SJG did not intend that its proposed pipeline project would primarily serve to repower BLE. She explained:

The Pinelands CMP at N.J.A.C. 7:50-5.23(b)12 permits the development of public service infrastructure, which includes natural gas transmission lines, within a Forest Area, if such infrastructure is intended to primarily serve only the needs of the Pinelands. The term 'Pinelands' is defined by the Pinelands CMP at N.J.A.C. 7:40-2.11 as including both the Pinelands Natural Reserve and the Pinelands Area. Consequently, the term "Pinelands" is broader than the term "Pinelands Area" which is defined by the Pinelands CMP as the area designated as such by Section 10(a) of the Pinelands Protection Act.

Wittenberg concluded that SJG had demonstrated that its proposed pipeline is consistent with the permitted use standards of the CMP. She wrote that the pipeline is designed primarily to transport gas to BLE, an existing facility located in the

Pinelands. She found that the project is "intended to primarily serve only the needs of the Pinelands," and was a permitted use in the Forest Area, pursuant to N.J.A.C. 7:50-5.23(b)(12).

### III.

On December 16, 2015, the Board issued its order on SJG's MLUL petition. The Board reviewed all the evidence and testimony of the numerous public comments including those provided by PPA, the COF, and Wittenberg's December 14, 2015, consistency determination. The Board noted that Wittenberg had concluded the project was consistent with the minimum standards of the CMP. The Board found that SJG had met its burden of proof under N.J.S.A. 40:55D-19, and had established that the project was reasonably necessary for the service, convenience or welfare of the public.

The Board considered the need for the project, the pipeline routing, and cost allocation. It found that: (1) conversion of BLE from coal and oil to gas-fired generation provides an environmental benefit; (2) continued operation of that plant would serve a need for capacity in the area and provides a clean source of in-state power in furtherance of New Jersey's Energy Master Plan ("EMP"); (3) the project would enhance the reliability of SJG's service territories; and (4) there was no alternative route that would have less adverse environmental impacts.

The Board also found that when the nearby Oyster Creek nuclear

power plant is taken out of service in 2019, BLE will be the only significant base-load power generating station in the coastal area of Southern New Jersey. Repowering BLE will increase power generation by thirty percent and reduce the production of greenhouse gases, including nitrogen oxides and sulfur dioxide.

The Board rejected PPA's contentions that SJG's real intention is to serve only its existing customers in Atlantic and Cape May Counties, as evidenced by its statements that it would pursue the project independently of the repowering of BLE, and that SJG's pipeline and the repowering of BLE would not serve the needs of the Pinelands.

The Board explained that, while it was "sensitive to the alleged environmental, health and safety concerns raised by the local residents," it was persuaded by the evidence that SJG "has considered the environmental impacts of the [p]roject and has committed to constructing the [p]ipeline guided by the goal of minimizing those impacts where they cannot be avoided." The Board noted that SJG's experts had analyzed the effect the alternative routes would have on the environment and had selected the preferred route based upon environmental-permitting considerations and DEP's input.

PPA and Sierra Club thereafter filed their notices of appeal. We consolidated the appeals, and also granted a motion by RC to

intervene. In addition, we granted a motion by Governors Byrne, Florio and Whitman to appear as amici curiae.

On appeal, PPA raises the following issues: (1) the Board and the Commission's Executive Director lacked jurisdiction to review the proposed project because the Commission had already declined to approve it under the Pinelands Protection Act, N.J.S.A. 13:18A-1 to -58, and the CMP rules; (2) the Commission and its Executive Director acted arbitrarily, capriciously, or contrary to law by failing to adhere to its original finding that the proposed pipeline violated the CMP; (3) the Commission erred by failing to conduct any review and taking any action on the proposed pipeline project; and (4) the Board acted arbitrarily, capriciously, or contrary to law by approving SJG's petition pursuant to N.J.S.A. 40:55D-19.

In its appeals, Sierra Club argues: (1) the Board's decision to grant SJG's MLUL petition was wrong as a matter of law: (2) the Board's approval of the MLUL petition must be conditioned upon the review and approval by the Commission of SJG's pipeline application; (3) the Commission erred by failing to ensure that all development in the Pinelands is consistent with the CMP; (4) the Executive Director did not have authority to issue a COF for the project and end Commission review; and (4) the Executive

A-1685-15T1

Director erred by finding that SJG's project was consistent with the CMP.

IV.

PPA argues that the Executive Director did not have jurisdiction or was precluded from issuing her December 14, 2015 consistency determination because: (1) the Commission's staff had determined that the project, as initially proposed, did not comply with the minimum standards of the CMP and SJG did not appeal that determination; (2) the Commission refused to take action approving the MOA, which would have allowed the project to proceed and SJG had appealed that determination; and (3) the pending appeal deprived the Commission and its staff from exercising any jurisdiction with regard to the project until the appeal was dismissed in May 2016. We find no merit in these arguments.

As we have explained, the Commission's staff initially determined that SJG had not established that the project was "intended to primarily serve only the needs of the Pinelands," as required by N.J.A.C. 7:50-5.23(b)(12), and therefore could not be constructed in the Forest Area. However, that was a decision on SJG's first application, and it was based on the information that was available at that time.

Furthermore, the Commission did not issue a decision finding that the project, as initially proposed, did not meet the

requirements of N.J.A.C. 7:50-5.23(b)(12). Although the Executive Director recommended that the Commission approve an MOA with the Board, based on the assumption that the project was not "intended to primarily serve only the needs of the Pinelands," the Commission never acted on the recommendation.

Thus, the decision by the Commission's staff on SJG's first application, and the Commission's failure to act on the proposed MOA did not preclude SJG from submitting a revised proposal, with additional information intended to establish that the project met the requirements of N.J.A.C. 7:50-5.23(b)(12). The second application was, in fact, a new matter, which the agency had authority to consider and act upon.

Moreover, SJG's appeal from the Commission's failure to approve the proposed MOA did not preclude the Commission from exercising its jurisdiction to review SJG's revised proposal. Rule 2:9-1(a) provides in part that "the supervision and control of the proceedings on appeal" shall be in the Appellate Division "from the time the appeal is taken[.]" The filing of an appeal generally divests the trial court or agency of jurisdiction to act in the matter under appeal, unless directed to do so by the appellate court. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 376 (1995).

The "proceedings on appeal" in SJG's appeal related to the Commission's failure to approve the MOA. SJG's second development application was a separate matter. We are therefore convinced that SJG's appeal did not divest the agency of jurisdiction to consider the revised development proposal. See Gandolfi v. Town of Hammonton, 367 N.J. Super. 527, 548 (App. Div. 2004) (noting that planning board had jurisdiction to consider new subdivision application despite pendency of appeal challenging prior denial of the application because second application was entirely new).

PPA further argues that the Commission acted arbitrarily, capriciously and unreasonably by failing to adhere to Wittenberg's initial determination that the pipeline as initially proposed did not comply with the CMP. PPA contends that the Commission is bound by principles of collateral estoppel and res judicata from taking a different position regarding the project's compliance with the CMP. PPA asserts the revised proposal was essentially the same as the initial proposal.

Again, we disagree. Collateral estoppel and res judicata do not apply here because Wittenberg's determination pertained to the first application, and the Commission never rendered a final decision on that application. See Hennessey v. Winslow Township, 183 N.J. 593, 599 (2005) (noting that re-litigation of an issue is precluded if the identical issue has been litigated and decided

in a prior proceeding). Moreover, SJG revised its plan and submitted additional information for the Commission's consideration on the issue of CMP compliance.

PPA's arguments on these issues are without sufficient merit to warrant further comment. R. 2:11-3(e)(1)(E).

V.

We turn to PPA's and Sierra Club's arguments that the Executive Director did not have authority to render a final decision on behalf of the Commission regarding the project's compliance with the CMP. Amici curiae also argue that under the Pinelands Act, the Commission was required to vote upon and determine whether SJG's application complied with the minimum standards of the CMP.

Section 502 of the National Parks and Recreation Act of 1978 (the Federal Act), 16 U.S.C.A. § 471i(c), created the Pinelands National Reserve, which includes all or part of fifty-six municipalities in seven southern New Jersey counties. The Federal Act directed the Governor of New Jersey to establish a planning agency to develop a CMP for the National Reserve. 16 U.S.C.A. § 471i(d). Governor Byrne thereafter established the Pinelands Planning Commission. N.J. Exec. Order No. 71 (Feb. 8, 1979), Laws of N.J. 1979, Vol. II, at 1897-1904.

The Pinelands Act was subsequently enacted. It established the Commission, N.J.S.A. 13:18A-4(a), and directed it to prepare a CMP to which county and municipal master plans must conform, N.J.S.A. 13:18A-8 to -10. The Act provided that the CMP must include a program for its implementation "in a manner that will insure the continued, uniform, and consistent protection of the pinelands area in accord with the purposes and provisions of the [state and federal legislation]." N.J.S.A. 13:18A-8(i).

The CMP applies to all development in the Pinelands Area. N.J.A.C. 7:50-1.4. The CMP states in pertinent part that "[t]he Commission bears the ultimate responsibility for implementing and enforcing the provisions" of the Pinelands Act and the CMP. N.J.A.C. 7:50-1.11. The CMP also states that the Executive Director is the chief administrative officer of the Commission, and is "charged with the administration and enforcement of" the CMP subject to the Commission's approval of the Executive Director's actions. N.J.A.C. 7:50-1.21(a).

The CMP sets forth procedures and standards for applications for development in municipalities whose master plans have been certified by the Commission. N.J.A.C. 7:50-4.31 to -4.42. In general, for certified municipalities, the CMP provides that the Executive Director shall initially review preliminary and final municipal approvals for development within the Pinelands. N.J.A.C.

19

7:50-4.37(a), -4.38(a), and -4.40(a). The CMP further provides that the Commission may review and issue decisions with regard to certain approvals. N.J.A.C. 7:50-4.38(b), -4.42, -4.91(a).

In addition, the CMP establishes procedures for so-called coordinated permitting by State agencies. N.J.A.C. 7:50-4.81 to -4.85. The CMP states that

> No department board, bureau, official or other agency of the State of New Jersey shall issue any approval, certificate, license, consent, permit, or financial assistance for the construction of any structure or the disturbance of any land in the Pinelands Area unless such approval or grant is consistent with the minimum standards of [the CMP].
>
> [N.J.A.C. 7:50-4.81(a).]

Before any application for development in the Pinelands Area is filed with a State agency, the applicant must submit a copy of the application to the Commission. N.J.A.C. 7:50-4.81(b). The State agency should not consider the application unless the Executive Director has issued a COF, a notice of filing, and a certificate of completeness, or the Commission has approved an application for public development. Ibid. The Executive Director then determines

> what, if any, special interests the Commission has with respect to the application, the extent to which the Commission staff should participate in any proceedings held by the state agency with which the application is to be filed, and whether any Commission review

provided for in this Plan should be conducted before, after or simultaneously with any proceedings to be conducted by the state agency.

[N.J.A.C. 7:50-4.82(a).]

If the Executive Director finds that the State agency may conduct its proceedings on the application "prior to or simultaneously with any Commission review provided for in [the CMP]," the Executive Director issues a COF, which indicates that the application has been filed with the Commission and the applicant is authorized to file the application with the State agency. N.J.A.C. 7:50-4.82(b).

The Executive Director then determines the degree to which Commission staff shall participate in the State agency proceedings. N.J.S.A. 7:50-4.82(c). Such participation "may include, but is not limited to

> 1. Submitting a written analysis of any concerns and opinions the Commission staff has with respect to the conformance of the proposed development with the minimum standards of the [CMP], including a list of any conditions which it determines should be imposed in the event that the permit is granted;
>
> 2. Submitting written evidence with respect to the conformance by the proposed development with the minimum standards of [the CMP]. [N.J.A.C. 7:50-4.82(c).]

The CMP does not, however, expressly provide that, in the coordinated permitting process, the Commission may review a determination by its staff or the Executive Director as to whether a particular development plan meets the minimum standards of the CMP. Furthermore, the CMP does not confer on the Executive Director or the Commission's staff the authority to render final decisions on CMP compliance in these circumstances. There also is no provision in the Pinelands Act that confers upon the Executive Director authority to render a final decision for the Commission in the coordinated permitting process.

Here, the Commission retains final decision-making authority as to whether SJG's proposed pipeline is consistent with the minimum standards of CMP. Indeed, as we have pointed out, the CMP states, "the Commission bears the ultimate responsibility for implementing and enforcing the provisions" of the Pinelands Act and the CMP. N.J.A.C. 7:50-1.11. The Commission therefore retains "ultimate responsibility" under the CMP to review the proposed project and render a final decision on CMP compliance.

On appeal, the Commission argues that N.J.S.A. 40:55D-19 provides sufficient authority for the Board to render a final decision as to whether SJG's development proposal is consistent with the CMP. The Commission points out that the Pinelands Act states that

A-1685-15T1

> no State approval, certificate, license, consent, permit, or financial assistance for the construction of any structure or the disturbance of any land within [the Pinelands] shall be granted unless such approval or grant conforms to the provisions of [the CMP].
>
> [N.J.S.A. 13:18A-10(c).]

However, in deciding whether to grant a petition brought under N.J.S.A. 40:55D-19, the Board determines whether the MLUL and local regulations adopted pursuant to the MLUL should be waived. The Board's approval of any MLUL petition must be consistent with the minimum standards of the CMP, but the Board is not empowered to make that determination in the first instance. In this matter, that decision must be made by the Commission, pursuant to its authority under the Pinelands Act and the CMP.

We note that, in this matter, the Board did not make a factual finding on the critical issue of whether SJG's pipeline is "intended to primarily serve only the needs of the Pinelands" and therefore a permitted use in the Forest Area. The Board merely relied upon Wittenberg's decision on this issue, and on that basis, its approval of SJG's MLUL petition complied with N.J.S.A. 13:18A-10(c).

We therefore conclude that the matter must be remanded to the Commission for further proceedings so that the Commission may review the Executive Director's determination, in light of the

objections that have been raised by PPA, the Sierra Club, and amici curiae. The Commission shall determine whether to review the Executive Director's decision based on the factual record developed before the Board, or whether the parties should be permitted to present additional evidence on the question of whether the pipeline is consistent with the minimum standards of the CMP.

The Commission also shall determine whether to refer the matter for a hearing before an Administrative Law Judge (ALJ). In that regard, we note that, under the CMP's provisions for review of development applications in municipalities with certified land use regulations, the Commission may review a preliminary approval if it raises substantial issues of CMP compliance. N.J.A.C. 7:50-4.37(a)-(b).

If so, the Executive Director must give notice of the staff's determination to the applicant, local permitting agency, and any interested persons. N.J.A.C. 7:50-4.37(b). The applicant, local permitting agency, and any interested persons may request a hearing before an ALJ. Ibid. Thereafter, the Commission may issue a final decision on the matter. N.J.A.C. 7:50-4.91(e).

The Commission shall consider whether the same or similar procedures should be followed in reviewing Wittenberg's decision. See In re Application of John Madin, 201 N.J. Super. 105, 128-34 (App. Div.) (holding that municipalities whose development

24

ordinances have not been certified by the Commission are entitled to an evidentiary hearing on the grant of development approval), certif. granted, 102 N.J. 380 (1985), certif. vacated, 103 N.J. 689 (1986). Moreover, the public should be afforded notice and the opportunity to be heard before the Commission renders a final decision on the application. Id. at 135-36.

In view of our decision, we need not address the other issues raised by the parties concerning the merits of Wittenberg's decision.

VI.

PPA argues that the Board did not have jurisdiction to consider SJG's MLUL petition. It also argues that the Board acted arbitrarily, capriciously and contrary to law in approving SJG's MLUL petition. PPA contends the record does not support the Board's determination that the pipeline is "reasonably necessary for the service, convenience, or welfare of the public," as required by N.J.S.A. 40:55D-19. We disagree.

PPA contends that the Board did not have jurisdiction to review SJG's MLUL petition because SJG previously had appealed the Commission's failure to approve the MOA for the project. We disagree with this contention for essentially the same reasons stated previously regarding PPA's contention that the appeal precluded the Commission from considering SJG's revised

25

application. The MOA and SJG's MLUL petition both pertained to the pipeline, but these were separate matters before State agencies, each with its own statutory responsibilities. We conclude the Board had jurisdiction to review and act upon SJG's petition.

We turn to PPA's challenge to the Board's decision. The scope of review of the final determination of an administrative agency is limited. In re Carter, 191 N.J. 474, 482 (2007). An agency's decision will be affirmed "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." In re Herrmann, 192 N.J. 19, 28 (2007). In reviewing an administrative agency's decision, we will grant considerable deference to the agency's expertise, where such expertise is a relevant factor. Campbell v. N.J. Racing Comm'n, 169 N.J. 579, 588 (2001).

Here, SJG petitioned the Board for waiver of the MLUL and local government MLUL regulations and approvals pursuant to N.J.S.A. 40:55D-19, which requires the Board to find that

> the present or proposed use by the public utility . . . is necessary for the service, convenience or welfare of the public . . . and that no alternative site or sites are reasonably available to achieve an equivalent public benefit, the public utility . . . may proceed in accordance with such decision of the [Board], any ordinance or regulation made under the authority of this act notwithstanding.

26

In making its determination, the Board must consider the site, the community zoning plan and zoning ordinances, the physical characteristics of the plot, and the surrounding neighborhood. In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 377 (1961). When determining reasonable necessity, the Board must consider alternative sites and their advantages and disadvantages, including their costs. Ibid. The Board also must weigh all of the parties' interests, and where those interests are equally balanced, it must give the utility preference in light of the Legislature's clear intent that the broad public interest to be served is greater than local considerations. In re Monmouth Consol. Water Co., 47 N.J. 251, 258 (1966); Pub. Serv., supra, 35 N.J. at 377.

Here, the Board considered the relevant factors, and there is sufficient credible evidence to support its finding that SJG had shown that the project is "reasonably necessary for the service, convenience or welfare of the public." N.J.S.A. 40:55D-19. The Board found that the "dedicated line" is reasonably necessary and would serve the goals of the EMP, one of which is to expand in-state resources fueled by natural gas. The Board determined that there is a need for electric-generating capacity in the area of BLE, noting that the Oyster Creek nuclear power plant in Southern New Jersey will be retired in 2019.

The Board noted that BLE will be the only significant base-load power generating station in the coastal area of Southern New Jersey. The Board also found that the "dedicated line" will cause a "significant improvement" in air quality in the region, by reducing the production of greenhouse gases, nitrogen oxides, and sulfur dioxide.

In addition, the Board found that the "reliability line" will enhance SJG's ability to provide reliable natural gas service to its customers. The Board noted that presently a single, twenty-mile-long pipeline services 60,000 SJG customers in Cape May County, and a disruption anywhere along this line could jeopardize service to these customers. The Board also noted that there is no other location in SJG's system with "a single upset vulnerability" of this magnitude.

PPA argues that the Board's decision unlawfully waives the pipeline's need to comply with the CMP. We do not agree. As noted previously, N.J.A.C. 7:50-4.81 mandates that no State agency may grant approval, license, or financial assistance for any construction or disturbance in the Pinelands "unless such approval or grant is consistent with the minimum standards of the [CMP]."

Here, the Board's order does not state that the pipeline is not subject to the Pinelands Act or the CMP. Indeed, the Board's decision correctly recognizes that the pipeline must be consistent

A-1685-15T1

with the minimum standards of the CMP. Thus, there is no merit to PPA's contention that the Board has waived compliance with the Pinelands Act and the CMP.

PPA further argues that the Board could not lawfully find that the project conforms to the CMP. PPA contends that the record shows that the pipeline is not "intended to primarily serve only the needs of the Pinelands." We note, however, that the Board did not make its own findings as to whether the project complies with the CMP. The Board merely took note of Wittenberg's determination of December 14, 2015, and relied upon that determination as a basis for concluding that the project met the minimum standards of the CMP. As we have determined, Wittenberg's decision must be reviewed by the Commission and the Commission must decide whether the project complies with the CMP.

PPA also contends that the record does not support the Board's decision that the pipeline furthers the goals of the EMP. PPA asserts the evidence does not show that the pipeline will result in a significant improvement in air quality and other positive environmental impacts. PPA also asserts that while the EMP encourages the use of "clean" energy sources like natural gas, the proposed pipeline violates the Pinelands Act and CMP, and the repowering of BLE is not necessary to ensure the reliability of the natural gas supply to SJG's customers in Southern New Jersey.

PPA's arguments lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E). Suffice it to say, however, there is sufficient credible evidence in the record to support the Board's findings on these issues, and PPA has provided no basis for this court to second-guess the Board's considered judgment that the pipeline furthers the goals of the EMP and is reasonably necessary for the service, convenience or welfare of the public.

On appeal, Sierra Club contends that the Board's decision waiving municipal approvals was wrong as a matter of law. Sierra Club contends that N.J.S.A. 40:55D-19 does not apply to Pinelands-based reviews and ordinances, and that the Board had no authority to override any local approval that is otherwise required by the Pinelands Act and any ordinances authorized and adopted under that Act. We are not persuaded by this argument.

By its plain language, N.J.S.A. 40:55D-19 gives the Board the authority to waive the MLUL and any local ordinance or regulation adopted pursuant to the MLUL. The Board's authority under N.J.S.A. 40:55D-19 necessarily includes the power to waive any MLUL review of approvals by municipalities in the Pinelands. The Pinelands Act does not limit the exercise of this power. However, as the Board recognized in its final decision, any development project for which local MLUL regulation is waived pursuant to N.J.S.A. 40:55D-

19 remains subject to the Pinelands Act and the minimum standards of the CMP.

Sierra Club also contends that the Board erred by relying upon Wittenberg's December 14, 2015 determination as a basis for its understanding that the project is consistent with the minimum standards of the CMP. As stated previously, Wittenberg was not authorized to render a final consistency determination regarding the project, and the matter will be remanded so that the Commission can render a final decision on that issue.

We therefore conclude that the Board's reliance upon Wittenberg's determination was misplaced. Consequently, the Board's December 16, 2015 order must be amended to state that approval of SJG's MLUL petition shall be conditioned upon issuance of a final decision by the Commission finding that the pipeline project meets the minimum standards of the CMP.

In view of our determination, we need not address the other issues raised by PPA, Sierra Club or amici curiae.

Accordingly, we remand Executive Director Wittenberg's December 14, 2015 determination to the Commission for further proceedings in conformity with this opinion. We also remand the matter to the Board for entry of a modified order, stating that the approval of SJG's petition under N.J.S.A. 40:55D-19 is conditioned upon the Commission's issuance of a final

determination finding that the pipeline project meets the minimum standards of the CMP. In all other respects, the Board's decision and order of December 16, 2015, is affirmed.

The Board's final decision is affirmed in part, and remanded in part for entry of an amended order of approval. In addition, Executive Director Wittenberg's decision is remanded to the Pinelands Commission for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1685-15T1