**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4997-16

IN THE MATTER OF THE
NEW JERSEY PINELANDS
COMMISSION'S APPROVAL
OF NEW JERSEY NATURAL
GAS'S APPLICATION
(NO. 2014-0045.001) FOR THE
INSTALLATION AND
OPERATION OF THE SOUTHERN
RELIABILITY LINK PROJECT AS
TO THE COMMISSION'S
RESOLUTION PC4-17-10.

_____

Argued January 20, 2021 – Decided April 29, 2021

Before Judges Yannotti, Haas, and Natali.

On appeal from the New Jersey Pinelands Commission, Resolution PC4-17-10.

Paul Leodori argued the cause for appellant Pinelands Preservation Alliance (Paul Leodori, PC, attorneys; Todd M. Parisi, on the brief).

Kristina L. Miles, Deputy Attorney General, argued the cause for respondent New Jersey Pinelands Commission (Gurbir S. Grewal, Attorney General, attorney; Melissa Raksa, Assistant Attorney General, of

counsel; Ryan C. Atkinson, Deputy Attorney General, on the brief).

Dennis J. Krumholz argued the cause for respondent New Jersey Natural Gas Company (Riker, Danzig, Scherer, Hyland, LLP, attorneys; Dennis J. Krumholz, of counsel and on the brief; Michael S. Kettler, on the brief).

PER CURIAM

This appeal represents another challenge to the Pinelands Commission's (Commission) decision to grant New Jersey Natural Gas Company (NJNG)'s proposal to construct the Southern Reliability Link (SRL), an approximate twelve mile natural gas pipeline traversing through several municipalities and a portion of the Pinelands area. Approximately 0.2 miles of the SRL would be constructed within a Regional Growth Area, N.J.A.C. 7:50-5.28(a); 1.40 miles within a Rural Development Area, N.J.A.C. 7:50-5.26(b)(10); and 10.45 miles within a Military and Federal Installation Area, specifically the Joint Base McGuire-Dix-Lakehurst (Joint Base), N.J.A.C. 7:50-5.13(h).

Appellant Pinelands Preservation Alliance (PPA), an environmental interest group, challenges Resolution No. PC4-17-10, which was adopted by the Commission in response to our remand of related appeals. The Resolution established the procedures by which the Commission is to review its Executive Director's determination that the SRL is consistent with the Pinelands Protection

Act, N.J.S.A. 13:18A-1 to -29 (the Act), and the Pinelands Comprehensive Management Plan (CMP) Rules, N.J.A.C. 7:50-1.1 to -10.30. PPA argues that: 1) the adoption of PC4-17-10 constituted improper rulemaking; 2) PC4-17-10 violates due process and laws governing development in the Pinelands; and 3) the approval of the NJNG application is invalid as a matter of law. We reject all of these arguments and affirm.

I.

The Act charges the Commission with developing the CMP Rules, i.e., a set of regulations that govern and guide land use, development, and natural resource protection in the designated Pinelands Area. N.J.S.A. 13:18A-8. Those rules establish various land use management areas, each having different goals, objectives, development intensities, and permitted uses. N.J.A.C. 7:50-5.11. Applications for development within the Pinelands Area must comply with all of the applicable minimum standards in the CMP Rules unless the Commission waives strict compliance under its formal waiver process. N.J.S.A. 13:18A-10(c); N.J.A.C. 7:50-4.61 to -4.70.

Pursuant to CMP Rules, public service infrastructure, such as the SRL, would be a permitted use in a Regional Growth Area and in a Rural Development Area. Further, the minimum standards governing the intensity of development

and land use at the Joint Base are governed by relevant provisions of the New Jersey Administrative Code.

Around the same time that NJNG filed its application, it also amended two petitions for the SRL pending before the Board of Public Utilities (Board). In its first petition, NJNG sought an order to install and operate the SRL in accordance with N.J.A.C. 14:7-1.4, that is, "with a maximum operating pressure in excess of 250 psig within 100 feet of any building intended for human occupancy." In its second petition, NJNG sought an order authorizing and approving the SRL's route designation, construction, and development in accordance with: 1) N.J.S.A. 40:55D-19, which allows the Board to grant a public utility's petition for exemption from all provisions of the New Jersey Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, and all local regulations and ordinances promulgated pursuant to the MLUL's authority; and 2) N.J.S.A. 48:9-25.4, which allows the Board to grant a gas company's petition designating the "practicable" route of its proposed gas transmission pipeline.

On December 9, 2015, the Commission's staff reviewed NJNG's Pinelands development application and issued a Certificate of Filing (COF) pursuant to N.J.A.C. 7:50-4.34, allowing NJNG to seek local municipal MLUL approvals for the project. On March 10, 2016, the Commission's Executive Director wrote

A-4997-16

to the Board, advising that: 1) the COF for NJNG's SRL project "continue[d] to be valid" based on the Commission's staff's review of the information submitted during the Board's public and evidentiary hearings; 2) the record for the proposed project "aptly support[ed]" the Joint Base's need for the SRL; and 3) NJNG demonstrated the SRL was a permitted use under N.J.A.C. 7:50-5.29(a)(2), governing development in the Pineland's Military and Federal Installation Areas.

On March 18, 2016, the Board issued an order finding in accordance with N.J.S.A. 40:55D-19 that: 1) the SRL project was "reasonably necessary for the service, convenience, or welfare of the public" to enable NJNG to continue to provide safe, adequate, and reliable service to its customers; 2) NJNG should be able to construct and begin operation of the pipeline as proposed; and 3) the local land use and zoning ordinances, and any other ordinance, rule or regulation promulgated under the auspices of the MLUL would not apply to the construction, installation and operation of the project. Based on the COF and the Executive Director's March 10 correspondence, the Board found that the SRL project was "consistent with the CMP" Rules and was "a permitted land use in a Military and Federal Installation Area because it is associated with the Federal Installation pursuant to N.J.A.C. 7:50-5.29(a)." Meanwhile, the Board

A-4997-16

had previously issued an order authorizing NJNG to construct and operate the SRL pursuant to the requirements of N.J.A.C. 14:7-1.4.

We then decided In re Petition of South Jersey Gas Co., (SJG) 447 N.J. Super. 459, 465 (App. Div. 2016). In that case, various parties, including PPA, appealed the Board's approval of a natural gas pipeline proposed by South Jersey Gas that would also run through the Pinelands. As in the present appeal, the Board relied on a COF and correspondence from the Commission's Executive Director that South Jersey Gas's project was consistent with the minimum standards of the CMP Rules. Ibid. The SJG court held, however, that "the CMP does not confer on the Executive Director or the Commission's staff the authority to render final decisions on CMP compliance in these circumstances," and that the Pinelands Protection Act did not "confer[] upon the Executive Director authority to render a final decision for the Commission in the coordinated permitting process." Id. at 477. The court remanded the relevant Pinelands matter to the Commission with specific instructions on conducting further proceedings. Id. at 478-79, 484.

In response, the Commission approved Resolution No. PC4-16-42, which outlined the process it would follow to review its staff's CMP consistency determination for SJG's proposed project "and any other public utility

application submitted to the Commission, which is also the subject of a petition to the BPU for municipal preemption in accordance with N.J.S.A. 40:55D-19."

The resolution stated:

> 1.  The Commission's review shall be based upon a review of the Commission's Regulatory Programs file for Pinelands Development Application, the record developed before the [Board] and the staff's consistency determination.
>
> 2.  The Commission staff shall provide notice of the public's opportunity to provide comments regarding the Commission staff's consistency determination by posting such notice on the Commission's website and by mailing it to the applicant; the parties to any litigation involving the proposed project's conformance with the Pinelands CMP, if applicable, and any person, organization or agency which has registered under N.J.A.C. 7:50-4.3(b)(2)(i)(2). Such notice shall also indicate that written comments may be provided until 5:00 p.m. on the date of the Commission meeting at which the opportunity for public comment will be provided.
>
> 3.  The Commission staff, following the close of the public comment period, shall review the record and any public comment provided and shall prepare a recommendation as to whether its prior consistency determination should be affirmed.
>
> 4.  Following the close of the public comment period, the Commission based on the record as delineated in paragraph 1 above, any public comments received and the Commission staff's recommendation, shall either approve or disapprove such recommendation.

7

In Resolution No. PC4-16-43, the Commission authorized its counsel to seek remands in pending appeals related to different pipeline applications that the agency had reviewed under the same process it had used for South Jersey Gas's project.

At the same time, two appeals were pending before us filed by PPA and the Sierra Club respectively, challenging the Executive Director's consistency determination for NJNG's SRL project. In January 2017, the Commission filed motions for remands in each appeal which we granted, specifically instructing in the Sierra Club appeal that:

> On remand, the Commission shall determine whether to render its decision based on the record before the Board of Public Utilities or to allow the parties to present additional evidence. The Commission shall also determine whether to refer the matter to the Office of Administrative Law [(OAL)] for an evidentiary hearing before an Administrative Law Judge [(ALJ)].

We did not retain jurisdiction and subsequently dismissed both appeals.

On June 9, 2017, the Commission adopted PC4-17-10, which was entitled "Resolution Setting Forth the Process By Which the Pinelands Commission will Review the Determination of its Executive Director Finding that the Installation of 12.1 miles of 30-inch Natural Gas Pipeline Proposed by New Jersey Natural Gas (Pinelands Application No. 2014-0045.001) is Consistent with the

A-4997-16

Standards of the Pinelands Comprehensive Management Plan."  The resolution

provided:

> [I]n conformance with the Appellate Division's Remand Orders dated January 31, 2017 and February 15, 2017, the Commission will review the Commission staff's consistency determination for the proposed [SRL] pipeline project according to the following process:
>
> 1.  The Commission intends to rely on the record developed before the Board of Public Utilities for NJNG's N.J.S.A. 40:55D-19 municipal preemption petition, as well as the Commission's Regulatory Program's application file for Pinelands Development Application 2014-0045.001 and the staff's consistency determination.
>
> 2.  The Commission has considered whether to refer this matter to the [OAL] for an evidentiary hearing and has decided not to do so, because:
>
>> a.  An additional evidentiary hearing is not necessary at this time given the limited regulatory issues involved in this application and the extensive record already developed both as part of the Commission's review of the application and hearings conducted before the [Board].
>
> 3.  The Commission staff shall provide notice of the public's opportunity to provide both oral and written comments regarding the Commission staff's consistency determination.  Such notice shall be posted on the Commission's website and mailed to the applicant, the Sierra Club and the Pinelands Preservation Alliance, and any person, organization or

agency which has registered under N.J.A.C. 7:50-4.3(b)(2)(i)(2). Such notice shall indicate that the oral comment meeting will occur no sooner than 45 days after the execution of this resolution and that written comments may be provided until 5:00 p.m. one week following the meeting at which the opportunity for oral public comment on the proposed pipeline application will be provided.

4. The former Appellants (Sierra Club and the Pinelands Preservation Alliance) may submit any additional information that they wish as part of the public comment process.

5. The Commission staff shall, following the close of the public comment period, review the record and any public comment provided and shall prepare a recommendation as to whether its prior consistency determination should be affirmed. Such recommendation report shall be posted on the Commission's website within 10 days of the Commission meeting at which Commission staff plans to present it for the Commission's consideration.

6. Any interested party who possesses a particularized property interest sufficient to require a hearing on constitutional or statutory grounds in accordance with N.J.S.A. 52:14B-3.2 [and] 3.3, may within 15 days of the posting of the Commission staff's recommendation report, submit a hearing request to the Commission.

7. At the next Commission meeting after the time for appeal set forth in Paragraph 6 above has expired and if no valid hearing request has been submitted, the Commission, based on the record as delineated in Paragraph 1 above, any public comments received and the Commission staff's recommendation, shall either approve or disapprove such recommendation.

A-4997-16

Upon passage of PC4-17-10, the Commission posted notice on its website that the public would have the opportunity to provide oral comment regarding NJNG's Pinelands development application at a special meeting on July 26, 2017, and written comments until the close of business on August 2, 2017. It also provided the notice to various local newspapers for publication. The Commission held the special meeting as scheduled, and ultimately approved NJNG's application in September 2017. This appeal followed.

II.

In PPA's first point, it contends that PC4-17-10 is invalid as a matter of law because the Commission's adoption constituted improper rulemaking in violation of the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -15. We reject this argument on both procedural and substantive grounds.

Our review of an administrative agency's final determination is limited. In re Adoption of Amends. to N.E. Upper Raritan, Sussex Cnty. & Upper Del. Water Quality Mgmt. Plans, 435 N.J. Super. 571, 582 (App. Div. 2014). We "afford[] a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (citing City of Newark v. Nat. Res. Council, Dep't of Env't. Prot., 82 N.J. 530, 539 (1980)). We reverse only if we "conclude that the

11

decision of the administrative agency is arbitrary, capricious or unreasonable, or is not supported by substantial credible evidence in the record as a whole." J.D. v. N.J. Div. of Developmental Disabilities, 329 N.J. Super. 516, 521 (App. Div. 2000).

Our review is therefore limited to three questions: 1) whether the decision is consistent with the applicable law; 2) whether the decision is supported by substantial evidence in the record; and 3) whether, in applying the law to the facts, the agency reached a decision that could be viewed as reasonable. In re Adoption of Amends., 435 N.J. Super. at 583 (citing Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)). The burden of proof is on the party challenging the agency's action. Lavezzi, 219 N.J. at 171.

Additionally, an administrative agency is afforded considerable discretion in selecting the appropriate manner of fulfilling its statutory obligations, N.W. Covenant Medical Ctr. v. Fishman, 167 N.J. 123, 137 (2001), but its "discretion to act formally or informally is not absolute." In re N.J.A.C. 7:1B-1.1 et seq., 431 N.J. Super. 100, 133 (App. Div. 2013). "Agencies should act through rulemaking procedures when the action is intended to have a 'widespread, continuing, and prospective effect,' deals with policy issues, materially changes existing laws, or when the action will benefit from rulemaking's flexible fact-

finding procedures."   In re Provision of Basic Generation Serv. for Period Beginning June 1, 2008, 205 N.J. 339, 349-50 (2011) (quoting Metromedia, Inc. v. Dir. Div. of Taxation, 97 N.J. 313, 329 (1984)).  Formal rulemaking "allows the agency to further the policy goals of legislation by developing coherent and rational codes of conduct so those concerned may know in advance all the rules of the game, so to speak, and may act with reasonable assurance."   Gen. Assembly of N.J. v. Byrne, 90 N.J. 376, 386 (1982) (quoting Boller Beverages, Inc. v. Davis, 38 N.J. 138, 152 (1962)).

The APA "provides the necessary starting point for any analysis of an agency's chosen pathway for action."  Provision of Basic Generation Serv., 205 N.J. at 347-48.   The APA defines an "administrative rule" as an "agency statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure or practice requirements of any agency."  N.J.S.A. 52:14B-2(e).  That definition does not include:  "(1) statements concerning the internal management or discipline of any agency; (2) intra-agency and inter-agency statements; and (3) agency decisions and findings in contested cases."  N.J.S.A. 52:14B-2.

Where the agency action satisfies the definition, "its validity requires compliance with the specific procedures of the APA that control the

promulgation of rules." Airwork Serv. Div. v. Dir. Div. of Taxation, 97 N.J. 290, 300 (1984); see also N.J.S.A. 52:14B-4(d) (stating a rule must be adopted in "substantial compliance" with the APA). These procedures require the agency to, among other things, publish notice of the proposed rule and inform "interested persons" and "all persons who have made timely requests of the agency for advance notice of its rule-making proceedings," N.J.S.A. 52:14B-4(a)(1); "[a]fford all interested persons a reasonable opportunity to submit data, views, comments, or arguments, orally or in writing," N.J.S.A. 52:14B-4(a)(3); and "[p]repare for public distribution . . . a report . . . providing the agency's response to the data, views, comments, and arguments contained in the submissions," N.J.S.A. 52:14B-4(a)(4).

Whether an agency must undertake formal rulemaking for a contemplated action depends on the extent to which the action:

> (1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or

14

(ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy.

[Metromedia, 97 N.J. at 331-32.]

A court's determination whether rulemaking is required under that standard entails a qualitative evaluation, rather than a quantitative one. State v. Garthe, 145 N.J. 1, 7 (1996). Not all of the Metromedia factors need be satisfied. In re Request for Solid Waste Util. Customer Lists, 106 N.J. 508, 518 (1987). These factors, "either singly or in combination," determine whether the agency's action amounts to the promulgation of an administrative rule, so long as they preponderate in favor of the formal rulemaking process. Metromedia, 97 N.J. at 331-32.

Procedurally, the Commission's actions were a direct result of our remand instructions and any contention that Resolution No. PC4-17-10 constituted improper rulemaking is therefore misplaced. Indeed, we remanded the issue of the Commission's inadequate application review process with specific instructions, which did not include a requirement that the Commission undertake formal rulemaking. We directed the Commission to "determine whether to render its decision based on the record before the Board of Public

15

Utilities or to allow the parties to present additional evidence," and to "determine whether to refer the matter to the OAL for an evidentiary hearing before an Administrative Law Judge." We further instructed the Commission to determine whether "to allow the parties [PPA and Sierra Club] to present additional evidence." On appeal, PPA does not argue that the court erred in its instructions, or that the Commission failed to properly implement them.

When an appellate court directs an administrative agency to take action, "the appellate judgment becomes the law of the case and the agency is under a peremptory duty not to depart from it." Lowenstein v. Newark Bd. of Educ., 35 N.J. 94, 116-17 (1961). Whether or not in agreement with the court, agencies have "a duty to obey the mandate of [the Appellate Division] 'precisely as it is written.'" In re Denial of Reg'l Contribution Agreement Between Galloway Twp. & City of Bridgeton, 418 N.J. Super. 94, 100-01 (App. Div. 2011) (quoting Flanigan v. McFeely, 20 N.J. 414, 420 (1956)). An appellate court's instructions "must be enforced as written, and relief from its direction 'can be had only in the appellate court whose judgment it is.'" Tomaino v. Burman, 364 N.J. Super. 224, 233 (App. Div. 2003) (quoting In re Plainfield-Union Water Co., 14 N.J. 296, 303 (1954)). "[T]he very essence of the appellate function is to direct conforming judicial action." Ibid.

16

In PC4-17-10, the Commission followed this court's instructions. The Commission elected to review NJNG's application by relying on the record developed before the Board and to not send the matter to the OAL for a hearing before an ALJ. Also, before rendering its final decision on NJNG's application, the Commission afforded the public notice and the opportunity to be heard on the SRL project's consistency with the CMP and allowed PPA to present additional evidence on the application. Furthermore, because PC4-17-10 was adopted in response to our remand instructions, the Commission was not required to comply with the notice and comment requirements of the APA.

PPA's arguments are also substantively without merit as the Commission's actions satisfy none of the Metromedia factors. Indeed, applying the first through third Metromedia factors, it is clear that the Commission did not intend PC4-17-10: 1) to have wide coverage encompassing a large segment of the regulated or general public, since the resolution applied only to NJNG's SRL pipeline; 2) to be applied generally and uniformly to all similarly situated persons, since it is limited in scope and not a standard of unvarying application; or 3) to operate in all future pipeline development applications.

It is also clear that after considering the fourth through sixth Metromedia factors, PC4-17-10 does not prescribe a new legal standard or administrative

A-4997-16

policy or a new interpretation of administrative regulatory policy. The Commission chose a process for this particular application ensuring that it would consider a full record and provide the public with notice and the opportunity to comment, which was consistent with its existing procedures under the CMP Rules for reviewing other applications that did not involve prior municipal approval, N.J.S.A. 13:18A-15, and consistent with this court's remand instructions. Since their inception, the CMP Rules have required that the Commission "retains 'ultimate responsibility' under the CMP to review the proposed project and render a final decision on CMP compliance." SJG, 447 N.J. Super. at 478 (citing N.J.A.C. 7:50-1.11). Thus, none of the Metromedia factors are satisfied or weigh in the favor of a formal rulemaking requirement. Therefore, the Commission did not have to comply with the APA's notice and comment procedures.[1]

III.

---

[1] We do not address PPA's argument that PC4-17-10 is invalid because it is "one in a series" of other invalid resolutions designed to allow the Commission to ignore rulemaking requirements for coordinated permitting among different agencies as none of these other resolutions are before the court, since PPA appealed only from the Commission's June 9, 2017, adoption of PC4-17-10. See Campagna ex rel. v. Am. Cyanamid Co., 337 N.J. Super. 530, 550 (App. Div. 2001) (issue not properly before court for review where order not included in notice of appeal or amended notice); Pressler & Verniero, Current N.J. Court Rules, cmt. 5.1 on R. 2:5-1 (2021).

In its second argument, PPA contends that the review process adopted by the Commission in PC4-17-10 violates due process and the laws governing the Pinelands Area, because the Commission reached its conclusion without conducting an adjudicatory hearing. PPA argues that the Commission's truncated review process where it was permitted merely to submit written and oral comments at a Commission meeting was not an adequate substitute for the opportunity to participate in an adjudicatory hearing involving the presentation of evidence, cross-examination and argument. PPA also maintains that the Commission's relying on the record developed during the Board's evidentiary hearing is insufficient for a proper review of NJNG's Pinelands development application under the CMP Rules. We are not persuaded by any of these arguments.

In our remand order, we charged the Commission with the sole discretion to determine whether an adjudicatory hearing was warranted or whether to rely on the testimony, cross-examination, and evidence offered before the Board. This was the same direction as in our remand instructions in SJG, 447 N.J. Super. at 479. As noted, the agency was required to comply with our instructions. Tomaino, 364 N.J. Super. at 233. Notably, PPA does not challenge

19

the remand instructions or argue that the review process approved by the Commission contravened our mandate.

PPA also mistakenly assumes an adjudicatory hearing was required here and the Commission's decision to consider its written materials and arguments violated its due process rights. "Due process does not always require an administrative agency to hold an evidentiary hearing before it goes about the business it was created to conduct." In re Solid Waste Util. Customer Lists, 106 N.J. at 520. "Sometimes nothing more is required than notice and the opportunity to present reasons, either orally or in writing, why the proposed action should not be taken." Id. at 521. How structured the procedure must be depends upon a balancing of three factors: 1) identification and specification of the private interest that will be affected by the official action; 2) assessment of the risk that there will be an erroneous deprivation of interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and 3) evaluation of the governmental interest involved, including the added fiscal and administrative burdens that additional or substitute procedures would require. Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

Moreover, it is well settled that a third-party objector to a development approval, like PPA here, does not have an automatic right to an adversarial hearing before the OAL. In re Auth. for Freshwater Wetlands Statewide Gen. Permit 6, 433 N.J. Super. 385, 407-08 (App. Div. 2013). Under the APA, "all interested persons are afforded reasonable opportunity to submit data, views or arguments, orally or in writing, during any proceedings involving a permit decision." N.J.S.A. 52:14B-3.1(a). However, the APA expressly prohibits a state agency from promulgating rules or regulations entitling a third party to an administrative hearing under the APA unless "specifically authorized to do so by federal law or State statute," or unless a person "has [a] particularized interest sufficient to require a hearing on constitutional or statutory grounds." N.J.S.A. 52:14B-3.1(b)-(d), -3.2, -3.3. PPA does not meet this criteria.

We reject PPA's arguments that the Pinelands Protection Act and our decision In re Application of Madin, 201 N.J. Super. 105 (App. Div. 1985), require the Commission to hold an adjudicatory hearing during its review process. The Act mandates only a public hearing when the Commission is reviewing a final municipal or county development approval. N.J.S.A. 13:18A-15. Here, there was no municipal or county approval for the Commission to review. Additionally, N.J.S.A. 13:18A-8(h) does not require the Commission

to hold evidentiary hearings during its review of every development application, but only requires the CMP Rules "to provide for the maximum feasible local government and public participation in the management of the pinelands area."

Further, In re Madin is factually distinguishable and does not support PPA's claim to an adjudicatory hearing. In that case, the court concluded that the Pinelands Protection Act "itself clearly evinces a legislative intent that hearings be conducted when the Commission reviews a development application." In re Madin, 201 N.J. Super. at 134. The issue there, however, was whether municipalities whose land use ordinances had not been certified by the Commission were entitled to a hearing before the Commission's approval of applications for development within the municipalities' boundaries. Id. at 119. Those circumstances are not present in this matter.

In addition, after In re Madin was decided, the APA was amended in 1993 to preclude agencies from granting adjudicatory or evidentiary hearings to third parties seeking to challenge an administrative agency's permitting decisions unless they held a statutory right to such a hearing or a particularized property interest of constitutional significance that would be directly affected by the development. N.J.S.A. 52:14B-3.1, -3.2, -3.3; see In re Freshwater Wetlands

Statewide Gen. Permits, 185 N.J. 452, 463-64 (2006) (citing N.J.S.A. 52:14B-2, -3.1, -3.2).

We also reject any claim that the Commission erred by relying on facts developed at the Board's evidentiary hearing for two independent reasons. First, as noted, PPA appealed only from the Commission's June 9, 2017 adoption of PC4-17-10, not the Commission's approval of the SRL and the issue is thus not properly before us on this appeal. See Campagna ex rel. v. Am. Cyanamid Co., 337 N.J. Super. at 550 (App. Div. 2001). Second, we addressed, and rejected, that argument in PPA's challenge to the substantive review of the Commission's approval of the SRL project in A-1004-17T1.

IV.

In its final point, PPA contends that the Commission's approval of NJNG's application was void as a matter of law. As best we can discern, PPA argues that the application was a legal nullity because it was approved by the Commission's employing an unlawful review process in PC4-17-10 that did not comply with the APA's rulemaking requirements and violated PPA's due process rights. We reject those arguments for the reasons previously stated.

To the extent we have not addressed any of the PPA's arguments, it is because we conclude they do not warrant discussion in a written opinion. <u>See</u> <u>R.</u> 2:11–3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4997-16